## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JANE DOE #1, a minor, by her mother and next friend, JANE DOE #2,<br><br>               Plaintiff,<br><br>    v.<br><br>MUKWONAGO AREA SCHOOL DISTRICT and JOE KOCH, in his official capacity as Superintendent of the Mukwonago Area School District,<br><br>               Defendant. | Civ. Action No. _____ |

## COMPLAINT FOR TEMPORARY RESTRAINING ORDER

1.      Jane Doe #1 ("Plaintiff"), by her mother and next friend Jane Doe #2, bring this Complaint against the Mukwonago Area School District ("MASD") and Superintendent Joe Koch ("Superintendent Koch" or "Koch") in his official capacity (collectively, "Defendants"), for a temporary restraining order and permanent injunctive relief, a declaratory judgment, and damages to redress Defendants' ongoing denial of Jane Doe #1's rights under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*, ("Title IX") and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution ("Equal Protection Clause"). Contrary to controlling precedent in the Seventh Circuit, Defendants are prohibiting Jane Doe #1, an eleven-year-old transgender girl, from using the school restrooms that accord with her gender identity, i.e., the girls' restrooms.

## <u>INTRODUCTION</u>

2.      Plaintiff Jane Doe #1, an eleven-year-old girl, is a student in the MASD's summer school program and will be a sixth grade student at MASD's Prairie View Elementary School

("Prairie View") in Waukesha County, Wisconsin, when the regular school year begins in early September. Jane Doe #1 is a girl. She is also transgender. Jane Doe #1 was assumed to be a boy when she was born and was designated "male" on her birth certificate, but she has a female gender identity and lives as a girl in all aspects of her life. Jane Doe #1's family, friends, medical providers, and others recognize Jane Doe #1 as a girl, respect her female gender identity, and support her right to live and be treated consistent with that gender identity.

3.      Jane Doe #1 and Jane Doe #2 moved to the school district when the former was in third grade. From third grade through most of fifth grade, Jane Doe #1 used the girls' bathrooms at Prairie View without incident or controversy, and with support from the adults in the school.

4.      Since approximately May of 2023, however, Defendants MASD and Koch have taken—and continue to implement—a series of discriminatory and highly stigmatizing actions against Jane Doe #1 based on her sex, gender identity, and transgender status. The actions, described more fully herein, include (a) applying shifting policies that have in common the denial of her access to girls' restrooms at school and the requirement that she use boys' or mens' restrooms or a single-occupancy purportedly gender-neutral restroom; (b) directing school staff to monitor her restroom usage at summer school; and (c) threatening disciplinary action if she continues to use the girls' restroom at summer school.

5.      Through these actions, Defendants have discriminated and continue to actively discriminate against Jane Doe #1 on the basis of sex, including on the basis of her gender identity, transgender status, and nonconformity to sex-based stereotypes, in violation of Title IX, and on the basis of sex and transgender status in violation of the Equal Protection Clause.

Defendants' actions deny Jane Doe #1 full and equal access to MASD's education programs and activities on the basis of her sex.

6. Plaintiff, through her mother and next friend Jane Doe #2, brings this action against Defendants to obtain redress for these unlawful and discriminatory actions. Absent relief, Plaintiff's injuries will continue to grow.

7. Jane Doe #2 has repeatedly advised Defendants that their actions violate Jane Doe #1's right to attend school free from sex discrimination. Despite being put on notice of the violations of Jane Doe #1's statutory and constitutional rights, MASD refuses to change its policy and practices. It instead continues to prohibit Plaintiff from using the girls' bathrooms.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1343(a)(3), and is authorized to order declaratory relief under 28 U.S.C. §§ 2201 and 2202.

9. Venue is proper in the Eastern District of Wisconsin under 28 U.S.C. § 1391(b) because the claims arose in the District, the parties reside in the District, and all of the events giving rise to this action occurred in the District.

## PARTIES

10. Plaintiff Jane Doe #1 is an eleven-year-old girl. She resides in Waukesha County, Wisconsin within the area served by Defendant MASD. Jane Doe #1 is a student at Prairie View Elementary School, one of MASD's public elementary schools. She is currently enrolled in MASD's summer school program at Mukwonago High School until July 13, 2023, and she will begin her sixth-grade year at Prairie View in September 2023.

3

11.     Jane Doe #2 is Jane Doe #1's mother and brings this action as her next friend. Jane Doe #2 resides in Waukesha County, Wisconsin within the area served by Defendant MASD.

12.     Defendant Mukwonago Area School District is a public school district located in Waukesha County, Wisconsin, serving approximately 5,000 students from kindergarten through twelfth grade. MASD is a recipient of federal funds and, as such, is subject to Title IX of the Education Amendments of 1972, which prohibits sex discrimination against any person in any education program or activity receiving Federal financial assistance. MASD operates eight schools, including six elementary schools, one middle school, and one high school. One of the elementary schools is Prairie View, a public elementary school located in North Prairie, Wisconsin, serving students in grades kindergarten through sixth grade. The high school is Mukwonago High School, a public high school located in Mukwonago, Wisconsin, serving students in grades nine through twelve.

13.     Defendant MASD operates a summer school program for students of varying grades, including elementary school students, at Mukwonago High School. The summer school program is led or facilitated by MASD staff and administrators. The Board is vicariously liable for the acts or omissions of its employees, agents, representatives, administrators, staff, and volunteers.

14.     MASD designates responsibility for its administration to its Superintendent. Defendant Joe Koch is the Superintendent. He assumed this position in the spring of 2023. At all times relevant to the events described herein, Defendant Koch acted within the scope of his employment as an employee, agent, and representative of MASD. In such capacity, he carried out the discriminatory practices described herein (a) at the direction of, and with the consent,

4

encouragement, knowledge, and ratification of MASD; (b) under MASD's authority, control, and supervision; and (c) with the actual or apparent authority of MASD.

## FACTUAL BACKGROUND

### *Plaintiff Jane Doe #1*

15. Jane Doe #1 has been a student at Prairie View since she was in third grade. She enjoys science and technology at school, and outdoor activities with her family. Jane Doe #1 has eagerly participated in summer school programming at Mukwonago High School for the past three years, where she enjoys participating in classes like coding for kids and softball.

16. Jane Doe #1 is a girl. She is also transgender. She was designated "male" on her birth certificate, but has identified as a girl since toddlerhood. She has presented as a girl at home since the age of three, and at school since first grade. Since then, she has lived as a girl and participated with girls in school activities when students are separated by gender. She has also used the girls' bathroom at school since she began presenting as a girl at school in first grade.

17. Jane Doe #1 has undertaken her gender presentation transition under the guidance and care of therapists and medical doctors. She was diagnosed with gender dysphoria by her health care provider in 2022. She is currently under the care of a child psychiatrist and sees a therapist regularly.

18. During first, second, and the first half of third grade, Jane Doe #1 used the girls' restroom along with other female students at the elementary school that she attended before moving to Prairie View. No problem arose with her restroom use during this time, whether from other students, parents in the district, or school staff.

19. When Jane Doe #2 enrolled Jane Doe #1 at Prairie View for the second half of third grade, Jane Doe #2 disclosed Jane Doe #1's transgender identity to three staff members: the

5

Prairie View principal, Jane Doe #1's third-grade classroom teacher, and the Prairie View gym teacher. Jane Doe #2 felt that these staff members should know Jane Doe #1's status as a transgender student so that they could ensure her safety and wellbeing at school.

20.     Jane Doe #1 voluntarily disclosed her transgender status to other students in her class at the beginning of her fifth grade school year. She did not experience negative responses to this disclosure, and she continued comfortably presenting and participating as a girl at school.

21.     Until the discriminatory events at issue in this Complaint, Jane Doe #1 felt happy and welcomed at school. Her teachers supported her learning and growth. She enjoyed friendships with her classmates. In all respects, she participated as a girl in school, whether playing on the girls' team in gym class or using the girls' restroom along with the other female students at school.

### MASD's Growing Opposition to Plaintiff's Access to Restrooms Consistent with Her Gender Identity at the End of the 2022-23 School Year

22.     Around early April 2023, the Prairie View principal reported to Jane Doe #2 that the principal had receiving phone calls from parents of Prairie View students. These parents asked the principal questions about Jane Doe #1's genitals. The principal refused to answer these inappropriate questions, but alerted Jane Doe #2 about the calls.

23.     Jane Doe #2 also learned in or around April 2023 that parents and other residents in Waukesha County had created a Facebook group called "Mukwonago Parents for Normal Education." Members of this group were writing disparaging posts and comments that clearly referred to Jane Doe #1. They described Jane Doe #1 as dangerous. They made accusations that Jane Doe #1 had exposed her genitals to other children in the bathroom. One group member wrote a comment asking if Jane Doe #1's parents were pedophiles. No evidence was offered in

support of these claims, which were so baseless that no investigatory activities were conducted by school or other authorities.

24.     No problems have arisen during the entirety of Jane Doe #1's use of the girls' bathroom at school since she was in third grade. No teacher, administrator, or other MASD staff member has ever contacted Jane Doe #2 to report that Jane Doe #1 exposed her genitals to other students in the restroom, nor is there any apparent record of this alleged occurrence. No teacher, administrator, or other MASD staff member has ever reported any complaints from students about Jane Doe #1's bathroom use at school.

25.     Jane Doe #2 was shocked and alarmed by the Facebook group. She worried about Jane Doe #1's safety at school in the wake of the harmful, inflammatory, and false statements written by members of the group.

26.     About a month after these posts and comments appeared on the Facebook group and the Prairie View principal began receiving phone calls from parents about Jane Doe #1, the MASD, through its elected leadership, *i.e.*, the School Board, involved itself with Jane Doe #1 and her bathroom use at school.

27.     On **May 15, 2023**, the School Board held a closed executive meeting, attended by its attorney, where it discussed Jane Doe #1's bathroom use. Jane Doe #2 attended part of this meeting. The School Board suggested several options for Jane Doe #1's bathroom use at the meeting. These suggestions included forcing Jane Doe #1 to use a separate bathroom designated solely for transgender students or a separate, single-occupancy gender-neutral restroom. Any restroom designated for transgender students would be solely used by Jane Doe #1 as the only transgender student at Prairie View (or at least the only transgender student known to school administrators), upon information and belief.

7

28.     When Jane Doe #2 expressed her opposition to these two options and told the School Board that Jane Doe #1 had a right to use the girls' bathrooms, the School Board told Jane Doe #2 that it was in a difficult position. The School Board stated that it could either anger parents who were opposed to Jane Doe #1's presence and bathroom use at school if it allowed Jane Doe #1 to continue using the girls' bathrooms, or it could be sued by Jane Doe #2 if the School Board refused to allow Jane Doe #1 to use the girls' bathrooms.

29.     After the initial School Board meeting on May 15, then-Superintendent Shawn McNulty told Jane Doe #1 that the School Board had not reached a decision. Jane Doe #2 was told that, in the interim, Plaintiff could continue using the girls' bathroom at Prairie View, she had been doing since third grade.

30.     On **May 22, 2023**, the School Board held a public meeting. During this meeting, members of the public spoke against Jane Doe #1 using the girls' bathrooms and made vitriolic comments towards her, including stating that there was a "boy in the girls' bathroom."

31.     The School Board did not make a decision on Jane Doe #1's bathroom use at the meeting on May 22, 2023. However, after the meeting, then-Superintendent McNulty informed Jane Doe #2 that Jane Doe #1 could continue using the girls' restroom for the remainder of the school year if she provided a doctor's note confirming Jane Doe #1's gender dysphoria diagnosis. Jane Doe #2 complied and sent a note from Jane Doe #1's doctor with this confirmation the next day. Jane Doe #1 continued using the girls' bathroom without issue.

32.     On **May 23, 2023**, the School Board sent an email to parents and students in the district stating that "[t]he School Board of the Mukwonago Area School District affirms its position that students should use the locker rooms and bathrooms of their sex at birth." The email

stated that the School Board would develop a related policy during the summer of 2023 for implementation in the 2023-24 school year.

33.     On **May 30, 2023**, MASD employee Christine Bowden sent Jane Doe #2 a special education and/or Section 504 referral for Jane Doe #1 based on her diagnoses of Attention-Deficit/Hyperactivity Disorder ("ADHD") and generalized anxiety disorder. Bowden had no explanation for why a special education and/or Section 504 referral were needed or appropriate, and Section 504 and other special education services for ADHD and anxiety are wholly unrelated to Jane Doe #1's restroom use as a transgender girl.

34.     Although there were no issues resulting from Jane Doe #1's continued use of the girls' bathroom at Prairie View Elementary School through the end of the 2022-2023 school year, Jane Doe #1 experienced unprecedented bullying from other students after MASD began targeting her because of her transgender status. Jane Doe #1 experienced episodes of bullying based on her gender identity multiple times each week during the end of the regular school year. Other students have continued to bully her for her gender identity during her time in summer school, especially on the bus. On multiple occasions, she has refused to take the bus home from school because of repeat instances of bullying that she has experienced in that setting. This bullying has caused Jane Doe #1 significant stress and anxiety.

### *MASD's Current Refusal to Allow Plaintiff to Use the Girls' Restroom During Summer School at Mukwonago High School*

35.     Jane Doe #1 attends MASD's summer school program at the high school. Before programming began, Defendant Superintendent Koch sent Jane Doe #2 a letter on **June 16, 2023**, stating that Jane Doe #1 was required to use "a gender-neutral or male bathroom" at summer school. The MASD Director of Pupil Services, Christine Bowden, also sent Jane Doe #2 an email attaching a map of the high school indicating the location of Jane Doe #1's summer

9

school classrooms and the location of the "gender-neutral" single-occupancy restrooms in the administration office and the health room.

36.     Jane Doe #1's classes are mostly situated on the second floor of the building, while the gender-neutral restrooms are situated a significant distance away on the first floor of the building. In contrast, the girls' bathrooms are situated across the hall or around the corner from Jane Doe #1's classes on the second floor.

37.     The purportedly "gender-neutral" single-occupancy restrooms in the administration office are, in fact, labeled by gender. These restrooms are typically used by staff members, and they are separately labeled male and female. MASD staff have directed Jane Doe #1 to use only the men's single-occupancy restroom, which is otherwise used only by adult male administrators. The other purportedly gender-neutral single-occupancy restroom is located in the health office, and is otherwise used only by students who are sick or visiting the school nurse.

38.     Despite the instructions from MASD administrators, Jane Doe #1 initially used the girls' bathroom during the first few days of summer school, as she had for her three years at Prairie View and her previous two years at summer school in the school district.

39.     Jane Doe #1 does not feel comfortable using the boys' restroom in general, nor at summer school. Jane Doe #1 identifies as a girl and feels deeply distressed at the idea of using the boys' restroom. Using the boys' restroom is at odds with Jane Doe #1's female identity and her public presentation as a girl. She is anxious that using the boys' bathroom would convey to her peers that she should be viewed and treated as a boy. Moreover, the boys' restrooms in Mukwonago High School are unsupervised and open to all students present during summer school. As a transgender eleven-year-old girl, Jane Doe #1 is afraid of encountering male students in these restrooms, including older high school boys. MASD has not acknowledged this

10

risk to Jane Doe #1's safety and wellbeing in its staff's communications with Jane Doe #2, nor in the correspondence described below in paragraph 48.

40.     Jane Doe #1 also does not feel comfortable using the single-occupancy restrooms in the administration office and the health room. The administration restrooms are typically used by teachers, not students. It is Jane Doe #1's understanding that she would be the only student allowed—in her case, required—to use these restrooms. The health office restroom is used only by students who are visiting the nurse, and using that restroom would expose her to illness and the scrutiny of other students. Additionally, these restrooms are located on a different floor from most of Jane Doe #1's summer school classes. She fears being asked by other students why she is using that restroom rather than the girls' bathroom; the time and inconvenience of traveling the longer distance to the restroom and the potential for missing class due to the longer travel time; and the stigmatizing, isolating nature of being forced to use a segregated bathroom apart from every other classmate.

41.     Shortly after summer school began on **June 19, 2023**, MASD staff began monitoring Jane Doe #1's bathroom use. On **June 22, 2023**, Christine Bowden sent an email to Jane Doe #2 notifying her that Jane Doe #1 had used the "female restroom" at summer school the day before, in violation of the requirement listed in Defendant Superintendent Koch's June 16 letter. Likewise, the summer school principal told Jane Doe #1 on June 22, 2023 that she must use the gender-neutral bathroom on the first floor.

42.     MASD staff then took Plaintiff on a "tour" of the boys' and gender-neutral restrooms. This interaction caused Jane Doe #1 to become distressed, and she advised the school social worker, Alexis Schultz, that she was experiencing thoughts of depression and self-harm.

43.     Despite Jane Doe #1's significant distress at the prospect of using the boys'
restroom or single-occupancy restrooms on the first floor, MASD staff continued to monitor Jane
Doe #1's restroom use, and to tell her that she was required to use those restrooms instead of the
girls' restroom.

44.     On **June 26, 2023**, MASD adopted a new restroom policy for the district, "Policy
5514." It requires that, "except as otherwise required by law," students use "restrooms and locker
room facilities on District property and at District-sponsored events according to each student's
original sex assigned at birth." Policy 5514 states that any requests for exceptions or
accommodations to the policy "shall be considered by a team of District staff on a case-by-case
basis in consultation with the student, the student's parents, the Director of Student Services, the
school psychologist, the school counselor, the classroom teacher, the building principal, and any
other individuals the District deems appropriate." It further states that "[a]ll decisions related to
such requests will take into consideration the safety and privacy of all students."

45.     Policy 5514 also states that "Accommodations for a diagnosis of gender
dysphoria shall be addressed in accordance with Section 504 of the Rehabilitation Act of 1973,
and the District's corresponding procedures for developing Section 504 Plans." Neither Policy
5514 nor any communications from MASD to Jane Doe #2 explain how or why the district is
attempting to apply Section 504 to Jane Doe #1's and other students' rights to use restrooms at
school that match their gender identities.

46.     Policy 5514 is illegal. It attempts to force Jane Doe #1 into an impossible choice
whereby she must choose between using the boys' restroom, which is extremely uncomfortable
to her and does not conform with her gender identity, or an isolating and stigmatizing restroom

12

that singles her out as the only transgender student at Prairie View or in summer school, subject to different rules and treatment.

47.     On **June 27, 2023**, undersigned counsel sent a letter to Defendant Superintendent Koch explaining how MASD is violating Plaintiff's rights and demanding that MASD permit her to use the girls' restroom at summer school and in the fall when the regular school year begins.

48.     On **June 28, 2023**, counsel for MASD sent a response. The letter was largely non-responsive, focusing inexplicably on unrelated questions about special education instead of sex discrimination. It did make plain, however, that Defendants reject the proposition that they are required by law to permit Jane Doe #1 to use the girls' restrooms —despite having been provided a copy of Jane Doe #1's gender dysphoria notice, there having been no issues over the past three years during which she has used the girls' restrooms, and being aware that the current prohibition against her use of the girls' restrooms is causing her to experience depression and thoughts of self-harm. Defendants' position is directly contradicted by controlling law, specifically *Whitaker ex. rel. Whitaker v. Kenosha Unified Sch. Dist., No. 1 Bd. Of Educ.*, 858 F.3d 1034 (7th Cir. 2017).

49.     Since the passage of Policy 5514, MASD summer school staff have continued to tell Jane Doe #1 that she cannot use the girls' bathroom and that she must use either the boys' restroom or the single-occupancy restrooms.

50.     On June 28, 2023, Defendants' summer school staff again intervened after Jane Doe #1 used the girls' bathroom at Mukwonago High School. MASD employee Alexis McCarthy interrupted Jane Doe #1 as a class was beginning and brought her downstairs to the Special Education office on the first floor. Once there, MASD employee Benjamin Kossow told

Jane Doe #1 that she may not use the girls' bathroom and that she was in violation of the School Board's policy.

51.    Jane Doe #1 became extremely upset that she had been pulled out of class and targeted once again for her bathroom use, and she told Kossow that she wanted to go home. Subsequently, McCarthy and Kossow called Jane Doe #2 to inform her that Jane Doe #1 had violated MASD's bathroom policy. Jane Doe #2 asked if Jane Doe #1 was in trouble, and Kossow told her that Jane Doe #1 would be disciplined if she continued to use the girls' restroom.

52.    On June 29, 2023, Jane Doe #1 was again pulled out of class by MASD staff after she was seen using the girls' restroom and told that she was in violation of the School Board's policy and that further use of the girls' restroom would result in disciplinary action.

53.    Based on the statements and actions of MASD officials, Jane Doe #1 feels deep anxiety about continuing to attend summer school, as well as returning to Prairie View Elementary School in the fall.

**INJURY TO PLAINTIFF**

54.    Through their actions described above, Defendants have injured and are continuing to injure Plaintiff.

55.    Defendants have denied Jane Doe #1 full and equal access to MASD's education programs and activities by denying her the full and equal access to student restrooms.

56.    Jane Doe #1 has experienced, and continues to experience, the harmful effects of being targeted for her transgender status and being prohibited from using the girls' bathrooms that she has used without issue for nearly three years at Prairie View, and during two previous summer school sessions at Mukwonago High School. She has experienced thoughts of self-harm

14

when MASD administrators have told her that she cannot use the girls' bathroom at summer school. She is experiencing depression, anxiety, embarrassment, and stigma.

57.     When school administrators and staff instruct Jane Doe #1 not to use the girls' restrooms and otherwise undermine her female identity and single her out as different from all other girls—as they continue to do—she feels deeply hurt, disrespected, and humiliated.

58.     As a direct and continuing result of Defendants' discriminatory actions, Jane Doe #1 has suffered increased and continuing emotional distress. She has experienced increased anxiety, thoughts of self-harm, and fear as a result of the discrimination she is experiencing at school.

59.     If Defendants refuse to grant Jane Doe #1 access to girls' restrooms for the remainder of summer school and for the upcoming 2023-2024 school year, she will likely experience a greater level of social stigma, emotional distress, academic harm, and impediments to her gender identity.

## CAUSES OF ACTION

### First Cause of Action
### Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*

60.     Plaintiff realleges and incorporates the facts and allegations contained in paragraphs 1 through 59 as fully set forth herein.

61.     Under Title IX and its implementing regulations, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a); *see also* 34 C.F.R. § 106.31 (Department of Education Title IX regulations); 7 C.F.R. § 15a.31 (Department of Agriculture Title IX regulations); 45 C.F.R. § 86.31 (Department of Health and Human Services Title IX regulations). Title IX's prohibitions

15

on sex discrimination extend to "any academic, extracurricular, research, occupational training, or other education program or activity operated by a recipient" of federal funding. 34 C.F.R. § 106.31; 7 C.F.R. § 15a.31; 45 C.F.R. § 86.31.

62. Title IX's prohibition on discrimination "on the basis of sex" encompasses discrimination based on an individual's gender identity, transgender status, and gender expression, including nonconformity to sex- or gender-based stereotypes.

63. Conduct specifically prohibited under Title IX includes, *inter alia*, treating one person differently from another in determining whether such person satisfies any requirement or condition for the provision of such aid, benefit, or service; providing different aid, benefits, or services in a different manner; denying any person any such aid, benefit, or service; or otherwise subjecting any person to separate or different rules of behavior, sanctions, or other treatment. 34 C.F.R. § 106.31; 7 C.F.R. § 15a.31; 45 C.F.R. § 86.31.

64. As a federal funding recipient, Defendant MASD, including the academic, extracurricular, and other educational opportunities that it provides through Prairie View Elementary School and Mukwonago High School, is subject to Title IX's prohibitions on sex- and gender-based discrimination against any student.

65. Defendants, by adopting and enforcing a policy or practice of prohibiting Plaintiff, a transgender girl, from accessing female-designated restrooms at school, and requiring that she use male-designated restrooms or single-occupancy restrooms, have discriminated and continue to discriminate against Plaintiff in her enjoyment of MASD's educational programs and activities by treating her differently from other female students based on her gender identity, the fact that she is transgender, and her nonconformity to female stereotypes, thereby denying her

the full and equal participation in, benefits of, and right to be free from discrimination in the educational opportunities offered by MASD on the basis of sex, in violation of Title IX.

66.     Defendants, through instructing MASD staff to report Jane Doe #1's use of the girls' restroom, operates an unlawful policy or practice of profiling Plaintiff and other students who are transgender and/or do not conform to sex- or gender-based stereotypes, and thereby deprive Plaintiff and similarly situated students of their rights under Title IX to be free from discrimination on the basis of sex, including on the basis of gender identity, transgender status, and nonconformity to sex- or gender-based stereotypes, in further violation of Title IX.

67.     Plaintiff has been, and continues to be, injured by Defendants' discriminatory conduct and has suffered damages as a result.

**Second Cause of Action**
**Violation of 42 U.S.C. § 1983 Based on Deprivation of Plaintiff's Rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution**

68.     Plaintiff realleges and incorporate the facts and allegations contained in paragraphs 1 through 59 as fully set forth herein.

69.     Under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, discrimination based on sex, including gender, gender identity, transgender status, and nonconformity to sex- or gender-based stereotypes, as well as discrimination based on transgender status alone, is presumptively unconstitutional and is therefore subject to heightened scrutiny.

70.     Defendants, by adopting and enforcing a policy or practice of prohibiting Plaintiff, a transgender girl, from accessing female-designated restrooms at school, and requiring that she use male-designated restrooms or single-occupancy restrooms, have discriminated and continue to discriminate against Plaintiff in her enjoyment of MASD's educational programs and

17

activities by treating her differently from other female students based on her gender identity, the fact that she is transgender, and her nonconformity to female stereotypes, thereby denying her the full and equal participation in, benefits of, and right to be free from discrimination in the educational opportunities offered by MASD through Prairie View Elementary School and Mukwonago High School on the basis of sex and transgender status, in violation of the Equal Protection Clause.

71.     Defendants, through instructing MASD staff to report Jane Doe #1's use of the girls' restroom, operates an unlawful policy or practice of profiling Plaintiff and other students who are transgender and/or do not conform to sex- or gender-based stereotypes, and thereby deprive Plaintiff and similarly situated students of their rights to be free from discrimination on the basis of sex, including on the basis of gender identity, transgender status, and nonconformity to sex- or gender-based stereotypes, in further violation of the Equal Protection Clause.

72.     Defendants' discrimination against Jane Doe #1 is not substantially related to any important governmental interest, nor is it rationally related to any legitimate governmental interest.

73.     Defendants are liable for their violation of Jane Doe #1's Fourteenth Amendment rights under 42 U.S.C. § 1983.

74.     Plaintiff has been, and continues to be, injured by Defendants' conduct and has suffered damages as a result.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jane Doe #1, by and through her mother and next friend, Jane Doe #2, requests that this Court:

18

(a)    Enter a declaratory judgment that the actions of Defendants complained of herein are in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq*. and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

(b)    Enter a temporary restraining order and permanent injunction, and all other affirmative relief necessary, enjoining Defendants and their affiliates, agents, employees, and representatives from continuing the illegal conduct described above, and further directing Defendants to remedy the effects of their illegal, discriminatory conduct alleged in this Complaint and to prevent similar occurrences in the future. Such affirmative relief should include, but not necessarily be limited to, enjoining Defendants from: (i) enforcing any policy, written or unwritten, against Jane Doe #1 that would prevent her from using the girls' restroom during any time she is on the school premises or attending school-sponsored events; and (ii) disciplining Jane Doe #1 for using the girls' restroom during any time that she is on the school premises or attending school-sponsored events.

(c)    Award compensatory damages to Plaintiff in an amount that would fully compensate her for the economic and educational losses, humiliation and embarrassment, emotional distress, and reputational harm, resulting from Defendants' unlawful and discriminatory conduct;

(d)    Award Plaintiff her reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(e)    Order such other relief as this Court deems just and equitable.

19

Dated: June 30, 2023

Respectfully submitted,

<table>
<tr><td></td><td>/s/ Alexa Milton</td></tr>
<tr><td></td><td>Alexa Milton</td></tr>
<tr><td>Victoria Davis</td><td>Glenn Schlactus**</td></tr>
<tr><td>Robert (Rock) Theine Pledl</td><td>Emily Curran*</td></tr>
<tr><td>DAVIS & PLEDL S.C.</td><td>Nicholas Abbott*</td></tr>
<tr><td>1661 N. Water Street, Suite 410</td><td>RELMAN COLFAX PLLC</td></tr>
<tr><td>Milwaukee, WI 53202</td><td>1225 19th Street NW, Suite 600</td></tr>
<tr><td>Phone: (414) 667-0390</td><td>Washington, DC 20036</td></tr>
<tr><td>vldd@davisandpledl.com</td><td>Phone: (202) 728-1888</td></tr>
<tr><td>rtp@davisandpledl.com</td><td>Fax: (202) 728-0848</td></tr>
<tr><td></td><td>amilton@relmanlaw.co</td></tr>
<tr><td></td><td>gschlactus@relmanlaw.com</td></tr>
<tr><td></td><td>ecurran@relmanlaw.com</td></tr>
<tr><td></td><td>nabbottt@relmanlaw.com</td></tr>
</table>

*\*\* Application for admission to this Court forthcoming*
*\*Admission to this Court pending*