# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Jane Doe #1, a minor, by her mother and next friend, Jane Doe #2,<br><br>    Plaintiff,<br><br>  v.<br><br>MUKWONAGO AREA SCHOOL DISTRICT and JOE KOCH, in his official capacity as Superintendent of the Mukwonago Area School District,<br><br>    Defendant. | Civ. Action No. 2:23-cv-876 |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### INTRODUCTION

Plaintiff Jane Doe #1, by her mother and next friend Jane Doe #2, has filed this emergency motion to request the Court's immediate intervention to stop Defendants Mukwonago Area School District ("MASD" or "the District") and Superintendent Joe Koch, in his official capacity as Superintendent of the District (collectively, "Defendants") from denying her permission to use restrooms consistent with her gender identity. Plaintiff is a transgender girl and has used the girls' restrooms at Prairie View for nearly three years without incident. Defendants have done a complete about face, however, and currently are denying Plaintiff permission to use the girls' restroom in her summer school program.

This violates Plaintiff's rights, as made plain by the Seventh Circuit's controlling decision in *Whitaker by Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034 (7th Cir. 2017). *Whitaker* leaves no room for doubt: denial of transgender students' ability

to use the bathroom consistent with their gender identity constitutes discrimination in violation of both Title IX and the Equal Protection Clause. *Id.* at 1046-54. The law in this case is clear, and Defendants are plainly violating it. Moreover, Defendants' conduct is causing Plaintiff substantial and irreparable harm. Defendants have rejected entreaties from Jane Doe #2 and counsel to cease immediately this denial of Plaintiff's rights.

Plaintiff Jane Doe #1 is an eleven year-old girl and an incoming sixth grade student in the Mukwonago Area School District ("MASD") in Mukwonago, Wisconsin. Plaintiff was designated "male" on her birth certificate, but she began presenting as a girl at home at the age of three, and at school since she began first grade. Since then, she has lived as a girl and participated with girls in school activities when they are separated by gender. She has also used the girls' bathroom at school since moving to the district at the beginning of third grade.

After nearly three years of Jane Doe #1 using the girls' bathroom without incident, Jane Doe #2 was informed earlier this month that her daughter must use "a gender-neutral or male bathroom" at summer school. Since then, Defendants have worked to deny Jane Doe #1 access to girls' restrooms at schools, directed school staff to monitor her restroom usage and report her use of the girls' restroom to administrators, and threatened disciplinary action for continued use of the girls' restroom.

Unless enjoined, Defendants' continuing discrimination against Jane Doe #1 will subject her to irreparable injuries. Beyond interfering with her ability to learn and to enjoy the privileges and benefits of summer school, living under the specter of disciplinary action for exercising her rights under federal law will disrupt her ability to attend and fully enjoy summer school—as any eleven year-old should be able to. Meanwhile, allowing Jane Doe #1 to use the girls' restrooms while this case proceeds on the merits will harm no one.

Through this motion, Plaintiff is asking only that the Court restore the status quo ante in which Plaintiff could use the girls' bathroom. For the reasons outlined below, the Court should issue a temporary restraining order barring Defendants from interfering with Plaintiff's use of girls' restrooms consistent with her longstanding gender identity and presentation.

## STATEMENT OF FACTS

Plaintiff Jane Doe #1 is an eleven-year-old girl who will enter her sixth-grade year at Prairie View Elementary School ("Prairie View"), one of MASD's elementary schools, in the fall. Dec. of Jane Doe #2, Ex. 2 at ¶ 3. She is currently enrolled in summer school at Mukwonago High School for her third summer participating in this program. *Id.* at ¶ 10.

Plaintiff is transgender. *Id.* at ¶ 4. Although she was assigned male at birth, she expressed to Jane Doe #2 from a very young age that she saw herself as a girl. *Id.* As such, she began presenting and living as a girl at home when she was three years old. *Id.* She began publicly presenting as a girl in first grade at the elementary school that she attended in another school district prior to Prairie View—she began using female pronouns and a more feminine name, growing out her hair, and wearing traditional girls' clothing. *Id.* at ¶ 5. Plaintiff has been diagnosed with gender dysphoria by a medical doctor and is currently under the care of a therapist to support her emotional and psychological wellbeing as a transgender child. *Id.* at ¶¶ 7, 34; May 24, 2023 Letter from T. Baines, Ex. 1-2.

When she was entering third grade, Plaintiff and her family moved to Waukesha County and she was enrolled at Prairie View. Ex. 2 at ¶ 3. Jane Doe #2 disclosed her daughter's transgender status to a few Prairie View staff members that Jane Doe #2 believed were necessary to help ensure her daughter's safety at school: the Prairie View principal, Jane Doe #1's classroom teacher, and the gym teacher. *Id.* at ¶ 9. Jane Doe #2 also met with then-

Superintendent Shawn McNulty at that time, who agreed that Jane Doe #1 would be treated as a girl and would use girls' restrooms. *Id.* These staff members were supportive and welcoming, using Jane Doe #1's feminine nickname and referring to her with female pronouns. *Id.* at ¶ 10.

Until Defendants' discriminatory conduct began, Jane Doe #1 did not encounter resistance to her use of facilities and participation in school activities consistent with her gender identity. *Id.* at ¶ 10. During the entirety of her time at Prairie View, Plaintiff has used female pronouns and presented physically as a girl. *Id.* at ¶ 9. Just like the other female students, she has participated in girls' groups whenever teachers separated students by gender. *Id.* Plaintiff also used the girls' bathroom during the nearly three years she has attended Prairie View. *Id.* Plaintiff's use of the girls' bathroom at Prairie View did not cause any disruption or concern until the events at issue in this lawsuit began in the late Spring of 2023, and there have not been any complaints from students or parents about Plaintiff's restroom usage that Jane Doe #2 has been made aware of. *Id.*

Around early April 2023, the Prairie View principal told Jane Doe #2 that she had begun receiving phone calls from parents of Prairie View students. *Id.* at ¶ 12. Shockingly, these parents were asking questions about Jane Doe #1's genitals and expressing concern about her bathroom use at school. *Id.* The principal also told Jane Doe #2 that parents and other residents of Waukesha County had created a Facebook group, called "Mukwonago Parents for Normal Education." *Id.* Group members were writing posts clearly referring to Jane Doe #1, describing the eleven-year-old child as dangerous. *Id.* One member asked whether Jane Doe #1's parents were pedophiles. *Id.* When Jane Doe #2 read these posts, she was horrified and worried about Jane Doe #1's safety at school. *Id.* Unfortunately, her concerns were well-founded.

About a month after the Facebook group appeared and the Prairie View principal began receiving calls about Jane Doe #1, MASD began interfering with Jane Doe #1 and her bathroom use at school. *Id.* at ¶ 12. On May 15, 2023, through its governing School Board, MASD held a closed executive meeting where it discussed Jane Doe #1's bathroom use and raised several options, including forcing Jane Doe #1 to use a separate bathroom designated solely for transgender students or a separate, single-occupancy gender-neutral restroom. *Id.* at ¶ 13. Jane Doe #2 attended part of the closed meeting. *Id.* She vehemently opposed the options presented by the School Board and told its members that her daughter had the right to use the girls' bathroom. *Id.* She explained that these options would single Jane Doe #1 out from her peers, force her to reveal to others that she was transgender without her consent, and stigmatize her. *Id.* The School Board did not make a decision that night but told Jane Doe #2 that it was "stuck between a rock and a hard place", stating that it could either upset parents who were opposed to Jane Doe #1's presence and bathroom use at school if it allowed her to continue using the girls' bathroom, or it could be sued by Jane Doe #2 if it prevented Jane Doe #1 from using the girls' bathroom. *Id.* at ¶ 15.

One week later, on May 22, 2023, the School Board held a public meeting at which members of the public spoke against Jane Doe #1 using the girls' bathroom and made hurtful comments towards her, calling her a "boy in the girls' bathroom." *Id.* at ¶ 17. Again, the School Board did not make a decision at this meeting but then-Superintendent McNulty told Jane Doe #2 the next morning that Jane Doe #1 could continue using the girls' restroom for the remainder of the school year if she provided a doctor's note confirming Jane Doe #1's gender dysphoria diagnosis. *Id.* at ¶ 18. Jane Doe #1's health care provider promptly provided this documentation, and she continued using the girls' restroom at Prairie View. *Id.*; *see* Ex. 1-2.

5

On May 23, 2023, the School Board sent an email to parents and students in the district stating that "students should use the locker rooms and bathrooms of their sex at birth." May 23, 2023 Email from MASD to Jane Doe #2, Ex. 1-1. The email stated that the School Board would develop a related policy during the summer of 2023 for implementation in the 2023-24 school year. *Id.* On June 26, 2023, MASD adopted a new restroom policy for the district, "Policy 5514," which mandates that students must use "restrooms and locker room facilities on District property and at District-sponsored events according to each student's original sex assigned at birth." Policy 5514, Ex. 1-14.

Later that week, Jane Doe #2 received a phone call from Christine Bowden, MASD's Director of Pupil Services, who told Jane Doe #2 that she would like to refer Jane Doe #1 for a special education or Section 504 referral based on her ADHD and anxiety diagnoses. Ex. 2 at ¶ 19. MASD staff had never told Jane Doe #2 that they were considering a Section 504 referral for Jane Doe #1 before the events leading to MASD's discriminatory conduct toward her began. Ex. 2 at ¶¶ 20-21. Jane Doe #2 was confused because there was no indication that Jane Doe #1 needed additional support in those areas, and felt that the referral was actually in retaliation for her opposition to MASD's interference with Jane Doe #1's bathroom use as a transgender girl. Ex. 2 at ¶¶ 20-21.

Before Jane Doe #1 began summer school programming at Mukwonago High School, Superintendent Joe Koch sent Jane Doe #2 a letter on June 16, 2023, stating that Jane Doe #1 was required to use "a gender-neutral or male bathroom" at summer school. June 16, 2023 Email from MASD to Jane Doe #2, Ex. 1-3. The MASD Director of Pupil Services, Christine Bowden, also sent Jane Doe #2 an email attaching a map of the high school indicating the location of Jane Doe #1's summer school classrooms and the location of the "gender-neutral" single-occupancy

restrooms in the administration office and the health room. June 19, 2023 Email from C. Bowden to Jane Doe #2, Ex. 1-4. While Jane Doe #1's classes are mostly situated on the second floor of the building, the single-occupancy restrooms are located at a significant distance on the first floor. *Id.* In contrast, the girls' bathrooms are located just across the hall or around the corner from Jane Doe #1's summer school classes. *Id.* Moreover, the supposedly "gender-neutral" single-occupancy restrooms on the first floor are not, in fact, "gender-neutral"—they are meant to be used by school staff members and are separately labeled male and female. Ex. 2 at ¶ 25. MASD staff have directed Jane Doe #1 to use only the men's single-occupancy stall, which is otherwise used by adult male administrators. *Id.*

Jane Doe #1 does not feel comfortable using the boys' restroom in general, nor at summer school. *Id.* at ¶ 27. Jane Doe #1 identifies as a girl and feels deeply distressed at the idea of using the boys' restroom. *Id.*

Jane Doe #1 also does not feel comfortable using the single-occupancy restrooms in the administration office and the health room. *Id.* at ¶¶ 24, 27. These restrooms are typically used by teachers, not students. *Id.* at ¶ 25. It is devastating to Jane Doe #1 that she would be the only student allowed—in her case, required—to use these restrooms. *Id.* at ¶ 27.

MASD staff began monitoring her bathroom use shortly after summer school began and has repeatedly told her that she is required to use the boys' bathroom or single-occupancy restrooms on the first floor. *Id.* at ¶¶ 25-26. MASD staff have sent several emails and placed several calls to Jane Doe #2 notifying her of Jane Doe #1's "violation" of the bathroom policy. *See* June 22, 2023 Email from C. Bowden to Jane Doe #2, Ex. 1-5; June 28, 2023 Email from B. Kossow to Jane Doe #2, Ex. 1-9; June 29, 2023 Email from B. Kossow to Jane Doe #2, Ex. 1-10.

Plaintiff has been forced out of the classroom to meet with MASD administrators each day after she uses the girls' bathroom. *See* Ex. 1-9; Ex. 1-10.

Though counsel, Jane Doe #2 attempted to resolve this dispute prior to filing litigation. On June 27, 2023, Plaintiff's counsel wrote a letter to Defendants informing them that their treatment of Plaintiff constitutes impermissible discrimination and demanding that MASD cease its discriminatory treatment of Jane Doe #1 and rescind its bathroom policy. *See* June 27, 2023 Letter from A. Milton. Defendants refused this demand. *See* June 28, 2023 Letter from J. Aziere.

Since the events at issue in this lawsuit began, Plaintiff has experienced escalating bullying and harassment from other students, including students taunting about her genitalia, asking whether she is a girl or boy, and telling her that she should not be allowed at school because she is a "freak." Ex. 2 at ¶ 32. As a result, she has refused to board the school bus on multiple occasions because she fears more harassment. *Id.* at ¶ 32. She has also suffered from significant depression and anxiety. *Id.* at ¶ 33. For example, after MASD staff took Plaintiff on a "tour" of the boys' and gender-neutral restrooms, Plaintiff informed the school social worker, Alexis Schultz, that she was experiencing thoughts of self-harm. June 22, 2023 Email from A. Schultz to Jane Doe #2, Ex. 1-7.

Before MASD began prohibiting her from using the girls' bathroom, Jane Doe #1 previously came home in smiles after school or summer school and tell her mother what she did that day. Ex. 2 at ¶ 33. Now, she comes home crying and upset almost every day, telling Jane Doe #2 how MASD staff are singling her out, surveilling her, and making her feel like she is somehow wrong for her identity. *Id.* Jane Doe #1 has even began to ask her mother, "Why am I even alive?" *Id.*

8

## LEGAL STANDARD

"The purpose of a temporary restraining order is to preserve the status quo pending the complete briefing and consideration of a motion for a preliminary injunction." *Faust v. Vilsack*, 519 F. Supp. 3d 470, 474 (E.D. Wis. 2021); *see also Geneva Assurance Syndicate, Inc. v. Med. Emergency Servs. Assocs.*, 964 F.2d 599, 600 (7th Cir. 1992) ("The essence of a temporary restraining order is its brevity, its ex parte character, and . . . its informality."). "[T]he showing required for a temporary restraining order and a preliminary injunction are the same." *Faust*, 519 F. Supp. 3d at 474; *accord Concentric, LLC v. Mages*, No. 2:21-CV-00937, 2021 WL 4710607, at *3 (E.D. Wis. Oct. 8, 2021).

In the Seventh Circuit, a district court undergoes a two-step analysis in determining whether this standard is met. *See Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). First, "a plaintiff must show that: (1) without this relief, it will suffer irreparable harm; (2) traditional legal remedies would be inadequate; and (3) it has some likelihood of prevailing on the merits of its claims." *Id.* (cleaned up) (quoting *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020)). If a plaintiff makes this threshold showing, the court must then "weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Id.* "This balancing process involves a 'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Id.* At this stage, a court may consider evidence inadmissible at trial, such as hearsay and declarations. *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997).

## ARGUMENT

The facts of Plaintiff's case and the clear dictates of the law demand that the Court grant Plaintiff's motion. Because Defendants refuse to respect Jane Doe #1's gender identity, she is suffering immense harm to her physical and psychological health, her emotional well-being, and her ability to learn. That harm is impeding her ability to take full advantage of the educational opportunities at school, and that harm will continue if Defendants are not enjoined from denying her equal access to facilities consistent with her gender identity. For the reasons explained below, Plaintiff's likelihood of success on both her Title IX and Equal Protection Clause claims is not only strong; it is ordained by Seventh Circuit in cases similar in all material respects to this one. And the balance of equities weighs heavily in Plaintiff's favor: as demonstrated by her use of girls' restrooms without incident for nearly three years in this school district, allowing her to continue to use those restrooms will impose no hardship on MASD or any MASD student. While an injunction would impose no harm—let alone irreparable harm—on Defendants, the permanent harm to Plaintiff without emergency relief would be profound.

**I. Plaintiff will suffer irreparable educational, psychological, and emotional harms if MASD's discriminatory policies and practices are not enjoined immediately, and she has no adequate remedy at law for those harms.**

Irreparable harm is found where a final judgment would be insufficient to compensate for the harm caused by Defendants' actions. *Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.* 735 F.3d 735, 740 (7th Cir. 2013). The Seventh Circuit has upheld a finding of irreparable harm where a transgender student was denied access to bathrooms consistent with their gender identity, based on the resulting stigma and negative effects on their emotional wellbeing. *Whitaker*, 858 F.3d at 1045. In another example, the Seventh Circuit upheld a finding of irreparable harm where a disabled student would suffer "diminished academic motivation" if he were unable to participate on his school basketball team. *Washington v. Ind. High Sch.*

*Athletic Ass'n, Inc.*, 181 F.3d 840, 853 (7th Cir. 1999). While the school argued that its policies would not directly *prohibit* the plaintiff from attending school, the court credited testimony that playing basketball "improved [plaintiff's] confidence in other areas of life, including education," the diminution of which, it held, would be irreparable.

Moreover, despite more than ample actual evidence of irreparable harm, there is also a *presumption* of irreparable harm when a plaintiff's constitutional or civil rights have been violated. *See Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011) (constitutional rights are "intangible and unquantifiable interests" that "cannot be compensated by damages"); *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001) ("where a defendant has violated a civil rights statute," "irreparable injury [may be presumed] from the fact of the defendant's violation"); *Rogers v. Windmill Pointe Village Club Ass'n,* 967 F.2d 525, 528 (11th Cir. 1992) (irreparable harm "may be presumed from the fact of discrimination").

Defendants' conduct has already exposed Plaintiff to significant injuries. Plaintiff has experienced thoughts of self-harm when she has been told by MASD administrators that she cannot use the girls' bathroom at summer school. She is experiencing lowered self-esteem, embarrassment, social isolation, and stigma, as well as heightened symptoms of gender dysphoria. When school administrators and staff instructed Plaintiff not to use the girls' restrooms and otherwise undermined her female identity and singled her out as different from all other girls, she has felt deeply hurt, disrespected, and humiliated. Ex. 2 at ¶¶ 24, 27, 33-34.

Without injunctive relief, Plaintiff will experience a greater level of social stigma, emotional distress, academic harm, and impediments to her gender identity resulting from Defendants' refusal to allow her to use the girls' restroom. She will be faced with the choice of using the boys' restroom—where she feels uncomfortable, anxious, and afraid—or the single-

user restrooms in the administration office and the health room—which impose not just a considerable inconvenience given their distance from her classroom, but also stigma associated with being the only student forced to use a segregated bathroom apart all of her classmates. Further, denying Plaintiff access to the girls' bathroom further conveys to her peers that she should be viewed and treated as a boy. For these reasons, multiple courts in this Circuit have found that "the negative emotional consequences with being refused access to the [] restrooms [consistent with one's gender identity] constitute irreparable harm that would be 'difficult—if not impossible—to reverse.'" *See A. C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 601 F. Supp. 3d 345, 355 (S.D. Ind. 2022) (quoting *J.A.W. v. Evansville Vanderburgh Sch. Corp.*, 323 F. Supp. 3d 1030, 1039 (S.D. Ind. 2018)).

There are no adequate remedies at law for these harms. "In saying that the plaintiff must show that an award of damages at the end of trial will be inadequate, we do not mean wholly ineffectual; we mean seriously deficient as a remedy for the harm suffered." *Roland Machinery Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). Courts in this Circuit have consistently held that damages are not an adequate remedy for the long-term detrimental harm that stems from being denied bathroom access based on gender identity. *See A. C. by M.C.*, 601 F. Supp. 3d at 355; *J.A.W.*, 323 F. Supp. 3d at 1039-40; *Whitaker*, 858 F.3d at 1054; *B.E. v. Vigo Cnty. Sch. Corp.*, 608 F. Supp. 3d 725, 734–35 (S.D. Ind. 2022). As in those cases, so too here are damages inadequate to redress the Plaintiff's injuries; injunctive relief is required to safeguard Plaintiff's constitutional and civil rights.

**II.    Plaintiff is likely to succeed on the merits of her Title IX and Equal Protection Clause Claims.**

In addition to showing irreparable harm and the inadequacy of traditional legal remedies, a Plaintiff seeking a TRO must also show "some likelihood of prevailing on the merits." *Speech*

12

*First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020) (quoting *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018)). Although "a plaintiff must demonstrate that its claim has some likelihood of success on the merits, not merely a 'better than negligible' chance," the 7th Circuit has noted that "[w]hat amounts to 'some' depends on the facts of the case at hand" because of its sliding scale approach. *Mays v. Dart*, 974 F.3d 810, 822 (7th Cir. 2020) (internal citations and quotations omitted). That standard is far surpassed here, where there is directly on point 7th Circuit precedent deciding precisely the same question in the plaintiff's favor.

This case is a direct match to the facts in *Whitaker*, where the 7th Circuit upheld this Court's issuance of a preliminary injunction requiring that the plaintiff, a transgender boy, be permitted to use the boys' restrooms at school. *Whitaker*, 858 F.3d at 1039. In *Whitaker,* as in this matter, the school district required the plaintiff to either use bathrooms based on his assigned sex at birth or use isolated single-user restrooms located in administrative areas of the building at a distance from his classes. *Id*. at 1040. And as in this case, the plaintiff in *Whitaker* had used restrooms consistent with his gender identity without issue for an extended period of time before the discriminatory treatment at issue in the case began. *Id* at 1041 (noting that plaintiff had used the boys' restrooms at school for six months his junior year without incident). There are no meaningful distinctions between the facts of the two cases. The ages of the plaintiffs differ—here an elementary student and there a high school senior—but their ages have no effect on the students' statutory or constitutional rights.

Without any significant distinguishing facts, the 7th Circuit's opinion in *Whitaker* is controlling here. The 7th Circuit in *Whitaker* found that the plaintiff was likely to succeed on both his Title IX and Equal Protection claims. The same holds true here.

13

Title IX prohibits discrimination "on the basis of sex" in "any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The court in *Whitaker* held that discrimination against an individual because they are transgender is actionable under Title IX as a form of sex-stereotyping discrimination, because "[b]y definition, a transgender individual does not conform to the sex-based stereotypes of the sex that he or she was assigned at birth." *Whitaker*, 858 F.3d at 1048. Since *Whitaker* was decided, this conclusion has only been strengthened by the Supreme Court's decision in *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731 (2020), which held, in the context of Title VII, that discrimination based on transgender status is a form of sex discrimination. *See also* U.S. Dep't. of Justice, *Memorandum Regarding Application of Bostock v. Clayton County to Title IX of the Education Amendments of 1972* (Mar. 26, 2021) (applying Bostock rule to Title IX); U.S. Dep't of Education, *Enforcement of Title IX of the Education Amendments of 1972 With Respect to Discrimination Based on Sexual Orientation and Gender Identity in Light of Bostock v. Clayton County*, 86 Fed. Reg. 32637 (to be codified at 34 C.F.R. ch. 1) (same).

As the court in *Whitaker* explained, "A policy that requires an individual to use a bathroom that does not conform with his or her gender identify punishes that individual for his or her gender non-conformance, which in turn violates Title IX.... Providing a gender-neutral alternative is not sufficient to relieve the School District from liability, as it is the policy itself which violates the Act." *Whitaker*, 858 F.3d at 1049-50. Many other courts have similarly struck down school districts' policies requiring transgender students to use bathrooms corresponding with their assigned sex at birth, or a gender-neutral alternative, under Title IX. *See, e.g., Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020), *cert. denied*, 141 S.Ct. 2878 (2021) ("A policy that requires an individual to use a bathroom that does not conform with his or her

gender identity punishes that individual for his or her gender non-conformance, which in turn violates Title IX."); *A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 601 F. Supp. 3d 345 (S.D. Ind. 2022) ("The overwhelming majority of federal courts—including the Court of Appeals for the Seventh Circuit—have recently examined transgender education-discrimination claims under Title IX and concluded that preventing a transgender student from using a school restroom consistent with the student's gender identity violates Title IX. This Court concurs."); *J.A.W. v. Evansville Vanderburgh Sch. Corp.*, 396 F. Supp. 3d 833, 841 (S.D. Ind. 2019) (granting summary judgment on behalf of transgender student challenging restroom policy).

Given the strength of this precedent, Plaintiff's likelihood of success on the merits of her Title IX claim is exceedingly strong. The fact that MASD has recently adopted a formal policy that contains some references to supposed exceptions or possible accommodations does not change this conclusion. Title IX "protects against discriminatory practices, not just policies" and MASD is engaged in a current, ongoing practice that violates Plaintiff's Title IX rights. *J.A.W. v. Evansville Vanderburgh Sch. Corp.*, 396 F. Supp. 3d 833, 841 n7 (S.D. Ind. 2019), *quoting Cannon v. Univ. of Chicago*, 441 U.S. 677, 704 (1979).[1]

The Plaintiff here likewise has a strong likelihood of prevailing on the merits of her Equal Protection claim. The Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Policies that include classifications based on sex trigger intermediate scrutiny by courts, under which a policy must be "substantially related to a sufficiently important governmental interest,"

---

[1] Plaintiff has provided Defendants with documentation of her gender dysphoria, but Defendants have nevertheless denied her access to the girls' restroom under its policies. There is no further information that Plaintiff could provide that would be illuminate her entitlement—by law—to an exception from Defendants' policy.

15

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 441 (1985), and a state actor must provide an "exceedingly persuasive" justification, *United States v. Virginia*, 518 U.S. 515, 534 (1996). Bathroom policies such as MASD's that treat transgender students differently from other students are subject to intermediate scrutiny because these policies are "inherently based on a sex-classification", *Whitaker*, 858 F.3d at 1051, and because transgender plaintiffs constitute "at least a quasi-suspect class" meriting increased protection under Equal Protection principles, *Grimm*, 972 F.3d at 610.

The vast majority of courts that have considered the issue, including the Seventh Circuit in *Whitaker*, have found that school districts' purported justifications for trans-exclusionary bathroom policies do not satisfy intermediate scrutiny, and thus violate the Equal Protection Clause. In particular, courts have roundly rejected the idea that privacy concerns of non-transgender students provide a sufficient justification to exclude, stigmatize, and harm transgender students. *See Grimm*, 972 F.3d at 613 (finding that exclusionary bathroom policy failed intermediate scrutiny because "the Board's policy [was] not substantially related to its important interest in protecting students' privacy"); *Whitaker*, 858 F.3d at 1052-54 (finding that bathroom policy was "arbitrary" and "based upon sheer conjecture and abstraction" and thus would not satisfy intermediate scrutiny). *See also Doe ex rel. Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 527 (3d Cir. 2018) (holding that school district's policy allowing students to use bathrooms and locker rooms consistent with their gender identity did not violate the privacy rights of objecting students); *Parents for Privacy v. Barr*, 949 F.3d 1210 (9th Cir. 2020) (rejecting plaintiff parent group's privacy arguments against school's policy allowing transgender boy to use boys' restrooms). Accordingly, MASD has advanced no justification and, in fact, *cannot* advance any justification sufficient to pass intermediate scrutiny; outrageous and

groundless charges from some members of the community do not remotely come close to justifying Defendants' decision to deny Plaintiff her right to be free of sex discrimination. Policies that force transgender students to use bathrooms that do not correspond to their gender identity or relegate them to separate facilities "very publicly brand all transgender students with a scarlet 'T,'" and Jane Doe #1 "should not have to endure that as the price of attending [her] public school." *Doe v. Boyertown Area Sch. Dist.*, 897 F.3d at 529.

### III. The balance of the equities weighs in favor of granting Plaintiff's motion.

This Court must weigh "any *irreparable* harm the nonmoving party would suffer if the court were to grant the requested relief" against the irreparable harm Plaintiff *will* suffer if the injunction is not granted. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA*, 549 F.3d 1079, 1086 (7th Cir. 2008) (emphasis added). Speculative harms to the nonmoving party are not enough. *See, e.g.*, *E. St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700 (7th Cir. 2005). Further, "there can be no irreparable harm to a [defendant] when it is prevented from enforcing an unconstitutional statute because it is always in the public interest to protect" constitutional rights. *Joelner v. Vill. of Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004) (internal quotations omitted).

Defendants will not suffer any harm—let alone harm that outweighs the considerable harm Plaintiff stands to suffer—from complying with a temporary restraining order. In *Whitaker*, the Seventh Circuit concluded that there was no evidence of harm where a transgender student had used the bathroom consistent with their gender identity "for nearly six months" without complaint. 858 F.3d at 1054. Here, Plaintiff has been using the girls' bathroom for nearly *three years*. There is no evidence of any problems arising during the entirety of that time: no teacher, administrator, or other MASD staff member has ever reported any complaints from students

17

about Plaintiff's bathroom use at school. Indeed, MASD has never asserted that treating Plaintiff as a girl would "harm" the school district or any of its students. Any harms now suggested by Defendants would be not only speculative but entirely belied by Plaintiff's use of the same girls' restrooms for years without issue.

Defendants' blocking Plaintiff from using the girls' bathroom threatens her with irreparable harm. Enjoining this policy and practice preserves the status quo that has existed for years without any evidence of harm. A balance of the equities—along with the public's interest in safe, inclusive schools for all students—points strongly in favor of issuing a temporary restraining order. In ordering this relief, "[t]here is no reason to require a bond in such a case" because there is "no danger that the opposing party will incur any damages from the injunction." *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 458 (7th Cir. 2010). Courts have consistently refused to require a bond in ordering the exact injunctive relief sought here. *See B.E.*, 608 F. Supp. at 736; *J.A.W.*, 323 F. Supp. 3d at 1042; *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, No. 16-CV-943-PP, 2016 WL 5239829, at *7 (E.D. Wis. Sept. 22, 2016).

## CONCLUSION

As she has for the past nearly three years, Plaintiff is attending summer school to learn, to play, and to make friends. Defendants' unfounded interference with her use of the girls' restroom does not just get in the way of these ambitions—it stigmatizes her, inconveniences her, and causes her distress, discomfort, and anxiety. Plaintiff has the right to go to school on the same terms as all of her classmates. There is no reason to compound the challenges Plaintiff is sure to face as she enters adolescence by subjecting her to discriminatory treatment. Therefore, Plaintiff respectfully requests that the Court enter a temporary restraining order as soon as possible to

prohibit Defendant from enforcing against Plaintiff any policy, practice, or custom that denies Plaintiff access to girls' restrooms at school and school-sponsored events and taking any formal or informal disciplinary action against Plaintiff for using girls' restrooms at school and school-sponsored events.

Dated: June 30, 2023

Respectfully submitted,

| | |
|---|---|
| Victoria Davis<br>Robert (Rock) Theine Pledl<br>DAVIS & PLEDL S.C.<br>1661 N. Water Street, Suite 410<br>Milwaukee, WI 53202<br>Phone: (414) 667-0390<br>vldd@davisandpledl.com<br>rtp@davisandpledl.com | /s/ Alexa Milton<br>Alexa Milton<br>Glenn Schlactus**<br>Emily Curran*<br>Nicholas Abbott*<br>RELMAN COLFAX PLLC<br>1225 19th Street NW, Suite 600<br>Washington, DC 20036<br>Phone: (202) 728-1888<br>Fax: (202) 728-0848<br>amilton@relmanlaw.com<br>gschlactus@relmanlaw.com<br>ecurran@relmanlaw.com<br>nabbottt@relmanlaw.com<br><br>*** Application for admission to this Court forthcoming*<br>*\* Admission to this Court Pending* |