UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JANE DOE #1, a minor,
by her mother and next friend, JANE DOE #2,

    Plaintiffs,

v.

    Case No.: 2:23-cv-876

MUKWONAGO AREA SCHOOL DISTRICT,
and JOSEPH KOCH, in his official capacity as
Superintendent of Mukwonago Area School District,

    Defendants.

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

NOW COME Defendants, Mukwonago Area School District ("MASD" or "District") and Joseph Koch, in his official capacity as District Superintendent (collectively, "Defendants"), who move this Honorable Court to deny the Motion for Temporary Restraining Order and Preliminary Injunction filed by Jane Doe #2, as mother and next friend of Jane Doe #1, against Defendants.

### INTRODUCTION

On June 30, 2023, Plaintiffs filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction." [Dkt. #5, p.1]. Specifically, Plaintiffs seek "the Court's immediate intervention to stop Defendants . . . from denying [Jane Doe #1] permission to use restrooms consistent with her gender identity" based on the irreparable harm Jane Doe #1 will purportedly suffer in the absence of such order. [Dkt. #5, p. 1; *see also* Dkt. #5-1, p. 1]. For the reasons articulated herein, a preliminary injunction is inappropriate to and unavailable in the case at bar.

First, Plaintiffs cannot make the requisite showing that, absent an injunctive order, harm will occur when the District has offered—and Plaintiffs have not availed themselves of—reasonable solutions to effectively address the present situation. Plaintiffs fail to acknowledge the measures the District has taken to mitigate and prevent harm to Jane Doe #1 and to ensure she has adequate educational, social, and emotional support.

Second, Plaintiffs fail to acknowledge facts and legal realities that distinguish the present situation from that which the Seventh Circuit examined in *Whitaker v. Kenosha Unified School District No. 1*, 858 F.3d 1034 (7th Cir. 2017).

Finally, Plaintiffs' proposed relief is a poor fit for the present situation given the extraordinary nature of emergency injunctive relief and the few weeks of summer school that remain. For these reasons, Plaintiffs' motion must be denied.

## FACTUAL BACKGROUND

The current sociopolitical landscape presents school districts across the United States with various challenges regarding educational best practices. Proponents of one strategy insist on a "one-size-fits-all" response, while opponents to the same strategy insist on an equally uncompromising position. Difficulties arise when either approach is applied to public social situations, such as the public-school classroom. This is particularly true in the context of sex, sexual orientation, and gender identity, wherein the complexity and nuance of the underlying issues—and disagreement over how to best teach, discuss, and approach them—renders a school district's job especially challenging. Defendants do not dispute their legal obligation to provide educational within a safe and constructive setting; indeed, the District has devoted considerable time and effort to identifying and implementing appropriate policies and practices when it comes to serving its students and the greater Mukwonago community. However, Defendants vehemently

2

Case 2:23-cv-00876-LA    Filed 07/04/23    Page 2 of 15    Document 9

refute any contention they have subjected Jane Doe #1 to discrimination or otherwise interfered "with her ability to learn and enjoy the privileges and benefits of summer school." [Dkt. #5-1, p. 2]. Likewise, Defendants strongly disagree with Plaintiffs' baseless assertion that, "[u]nless enjoined," District School Board Policy 5514 will cause Jane Doe #1 to suffer "irreparable injury." [*Id.*].

Jane Doe #1 is an eleven-year-old transgender student at Prairie View Elementary School ("Prairie View"), a primary school within the District. [Dkt. #5-1, p. 3]. Although Jane Doe #1 was assigned male at birth, she identifies as a girl, using she/her pronouns and presenting as a girl in everyday life. [*Id.*]. In the spring of 2023, the District began receiving phone calls and emails from parents regarding student restroom use. Specifically, several District parents and community members had expressed concerns regarding Jane Doe #1's use of the girls' bathroom despite having been assigned male at birth. Consequently, the District School Board held a closed executive meeting on May 15, 2023 to discuss the matter. [Dkt. #5-1, p. 5]. Jane Doe #2 attended part of this meeting, during which the School Board conveyed to her the concerns the District had received and proffered various means of redress. [*Id.*]. By her own admission, Jane Doe #2 "vehemently opposed the options presented by the School Board," instead insisting that Jane Doe #1 be able to use the girls' bathroom despite parent demands to the contrary. [*Id.*].

On May 22, 2023, the School Board held an open meeting to again consider the restroom use issue. [Dkt. #5-1, p. 5]. The following day, May 23, the School Board emailed District parents and students, stating the District would be requiring students to use the locker rooms and bathrooms of their sex assigned at birth and would be developing a School Board policy to this effect. [Dkt. #5-1, p. 6; Dkt. #5-17, p. 2]. That same day, former District Superintendent Shawn McNulty and Prairie View Principal Valerie Vos met with Jane Doe #2 to discuss the School

Board's decision and how best to support Jane Doe #1. At such meeting, former Superintendent McNulty and Principal Vos suggested a Section 504 evaluation as a possible next step, particularly given Jane Doe #1's anticipated attendance in the Mukwonago High School summer school program. On May 25, 2023, Director of Pupil Services Christine Bowden called Jane Doe #2 to discuss a comprehensive evaluation. Then, Ms. Bowden sent Jane Doe #2 the following email on May 30, 2023:

> [Jane Doe #2],
>
> Thank you for taking the time to talk with me last week (5-25-23). As discussed, based on [Jane Doe #1]'s diagnosis of ADHD and generalized anxiety disorder, state and federal laws regarding Child Find require the District to initiate a special education and/or Section 504 referral. A referral is the first step in the evaluation process to determine whether [Jane Doe #1] qualifies as a child with a disability under the IDEA and if so, whether [Jane Doe #1] requires specially designed instruction. We could also explore whether [Jane Doe #1] qualifies for additional support or services under Section 504. I understand you do not wish to pursue a referral nor consent to additional testing at this time, and you have that right to refuse consent.
>
> With the summer approaching and the need to create a team, I would ask that for scheduling purposes, you return the consent for evaluation by June 2nd. This date is certainly flexible. Please contact me with any questions. I can be reached at 262.363.6300 ext. 24200.
>
> Attached is the referral for an evaluation and a copy of your procedural safeguards.

On June 1, 2023, the District sent Jane Doe #2 a Notice and Consent Regarding Need to Conduct Additional Assessments, which included identifying the existing data to be reviewed along with the suggestion of behavior rating scales to determine eligibility. Despite the aforementioned efforts, the District received no response from Jane Doe #2. On June 16, 2023, Jane Doe #2 emailed Ms. Bowden to confirm she had received hard copies of the Special Education and Section 504 referral forms in the mail, to reiterate the fact that she did not give consent for

said referrals, and to inquire into why such referrals were necessary. On June 22, 2023, Ms. Bowden emailed Jane Doe #2 the following response:

> Good Afternoon [Jane Doe #2],
>
> Thank you for your email. I understand that you do not wish to pursue a referral for special education or a 504 and that is your right to refuse consent. I would like to frame out the rationale and reasoning behind the district's child find obligation and special education referral for [Jane Doe #1].
>
> ADHD – [Jane Doe #1] currently has universal supports in place for managing her ADHD [sic] these include taking motor breaks during the school day and using fidgets as necessary. Although these are currently supported in the general education setting, an IEP or 504 solidifies these supports and ensures that [Jane Doe #1] continues to be able to access them as she transitions from grade to grade and elementary to middle school. A referral for special education is not indicative of qualifying for special education services, it is a team approach to analyzing if [Jane Doe #1] would benefit from any additional support. ADHD is a recognized area of impairment and is defined as such in the DSM-V.
>
> Generalized Anxiety Disorder – [Jane Doe #1] currently accesses the school counselor or school psychologist 2-3x per week. Although these are currently supported from a universal lens, an IEP or 504 solidifies these supports and ensures that [Jane Doe #1] continues to be able to access them as she transitions from grade to grade and elementary to middle school. Additionally, the school psychologist also checks in with the classroom teacher weekly to ensure that [Jane Doe #1] is being successful in navigating her emotions.
>
> Gender Dysphoria – Currently this diagnosis is recognized as a disorder in the DSM-V. This does not equate to [Jane Doe #1] having a disability. However, as [Jane Doe #1] navigates the emotions and social situations, it can have an impact that may require additional services such as coping strategies, more frequent check-ins, emotional regulation strategies as such examples. This may not require specially designed instruction. It does foster conversations around how to best support her.
>
> As outlined in the Department's regulations implementing Section 504, school districts must conduct individualized evaluations of students who, because of disability, including ADHD, need or are believed to need special education or related services, and must ensure that qualified students with disabilities receive appropriate services that are based on specific needs, not cost, and not based on stereotypes or generalized misunderstanding of a disability. These and other Section 504 obligations apply to all students with disabilities and specifically pertain to students with ADHD.
>
> Thank you,

Christine Bowden

Again, the District received no response from Jane Doe #2 regarding additional supports for Jane Doe #1. The same day, Superintendent Koch sent Jane Doe #2 a letter to articulate the requirement that Jane Doe #1 use either a single-user, gender-neutral bathroom or the boys' restroom during summer school. [Dkt. #5-1, p. 6]. On June 19, 2023, Ms. Bowden again emailed Jane Doe #2, this time attaching a map of the high school to indicate the location of Jane Doe #1's summer school classrooms and the single-user, gender-neutral bathrooms at her disposal. [Dkt. #5-1, pp. 6-7; Dkt. #5-20, p. 2]. When Jane Doe #1 continued to use the girls' restroom despite the District's directives to the contrary, District personnel communicated this to Jane Doe #2 and reiterated the requirement that she use either a single-user, gender-neutral bathroom or the boys' restroom. [Dkt. #5-1, pp. 7-8]. Additionally, District personnel met with Jane Doe #1 to communicate the District's expectations and offer additional support. [See, e.g., Dkt. #5-23, p. 2].

On June 26, 2023, the District codified its student bathroom use policy as Policy 5514 – Student Privacy in Restrooms and Locker Rooms, pursuant to which students are directed to use the bathroom corresponding with their sex assigned at birth. [Dkt. #5-16]. Board Policy 5514 requires a team of District staff to consider exceptions or accommodations to this requirement on a case-by-case basis in consultation with the student, the student's parents, the Director of Student Services, the school psychologist, the school counselor, the classroom teacher, the building principal, and any other individuals the District deems appropriate. [*Id*.]

Plaintiffs' legal counsel sent the District a demand letter on June 27, 2023, alleging the District's treatment of Jane Doe #1 constitutes impermissible discrimination based on sex and demanding that MASD both cease its purported discrimination and rescind its Board Policy 5514. [Dkt. #5-1, p. 8; Dkt. #5-27]. Contrary to Plaintiffs' contentions, the District did not refuse the

demands articulated in the June 27 letter; in fact, the District's legal counsel indicated the direct opposite in their response letter of June 28, 2023:

> We are not summarily rejecting the items in your demand letter. However, the District would like to first engage with the family and carry out the processes outlined in its policy. Following a meeting with the family, we anticipate being able to respond to the demands in more certain terms at that time.

[Dkt. #5-28, p. 5; *but see* Dkt. #5-1, p. 8].

Rather than attempt to resolve the dispute through the foregoing means, Plaintiffs filed suit against the District and Superintendent Koch on June 30, 2023, alleging discrimination based on sex in violation of Title IX of the Education Amendments of 1972 and the Equal Protection Clause of the Fourteenth Amendment via 42 U.S.C. § 1983. In addition, Plaintiffs simultaneously filed a Motion for Temporary Restraining Order and Preliminary Injunction, which is the subject of this brief. Based on the Plaintiffs' inability to demonstrate irreparable harm, the absence of analogous case law in support of their request, and the extraordinary nature of emergency injunctive relief (particularly when paired against the present circumstances), Defendants respectfully request that this Court deny such motion.

## LEGAL STANDARD

A preliminary injunction functions as an equitable, interlocutory form of relief, and for those reasons it is "an exercise of a very far-reaching power, **never to be indulged in except in a case clearly demanding it**." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of United States of Am., Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008) (emphasis added). Importantly, the showing required for obtaining a temporary restraining order and a preliminary injunction are the same. *Faust v. Vilsack*, 519 F. Supp. 3d 470, 474 (E.D. Wis. 2021).

Courts engage in two distinct analytical phases in determining whether to grant a request for preliminary injunction: a threshold phase, and a balancing phase. *Girl Scouts,* 549 F.3d at

1085-86. The moving party must demonstrate three requirements in the threshold phase: (1) without a preliminary injunction, irreparable harm is likely to occur preceding final resolution of claims; (2) traditional legal remedies are inadequate; and (3) the claim has "some likelihood of succeeding on the merits." *Id.* Should the movant fulfill these threshold requirements, the court then conducts a balancing analysis to weigh the irreparable harm a movant would suffer without a preliminary injunction against that which the respondent would incur in the face of such order. *Girl Scouts,* 549 F.3d at 1085-86. This analysis requires a sliding-scale approach: where a plaintiff is more likely to prevail, the balance of harm need not weigh so heavily in her favor; where a plaintiff is less likely to win, the balance of harm must weigh far more heavily in her favor. *Id.* Finally, the balancing analysis invites consideration for harm nonparties may face—i.e., the "public interest." *Id.*

Courts have interpreted this rule narrowly, especially at the preliminary stage. *See Mays v. Dart*, 974 F.3d 810, 822 (7th Cir. 2020). A preliminary injunction is an "extraordinary remedy" that "is never awarded as a matter of right" and "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Whitaker v. Kenosha Unified Sch. Dist. No 1 Bd. Of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017); *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008). This is not a case in which such extraordinary action should be taken.

## ARGUMENT

**I.  PLAINTIFFS CANNOT DEMONSTRATE AN IMMEDIATE, IRREPARABLE LOSS WOULD OCCUR IN THE ABSENCE OF AN INJUNCTIVE ORDER.**

First, Plaintiffs cannot make the requisite showing that, absent an injunctive order, immediate and irreparable harm will occur. This is particularly true given that the District has offered—and Plaintiffs have not availed themselves of—reasonable solutions to effectively address the present situation.

Plaintiffs argue Jane Doe #1 has and will suffer irreparable harm if the District is not enjoined from implementing Board Policy 5514. [Dkt. #5, p. 3; Dkt. #5-1, pp. 10-12]. While the District disagrees Jane Doe #1 faces any irreparable harm, the District has repeatedly attempted to engage in the process set forth in the policy to ensure the absence of any such potential harm. In their plea for relief, Plaintiffs fail to acknowledge the measures the District has taken to prevent any potential harm to Jane Doe #1 and to ensure she has adequate educational, social, and emotional support. Moreover, Plaintiffs' refusal to engage with the District in the accommodation procedure articulated within Board Policy 5514—which is intended to ensure no harm to the student—negates Plaintiffs' claims of irreparable harm.

Harm is considered irreparable if it "cannot be prevented or fully rectified by the final judgment after trial." *Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1089 (quoting *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984)). In the case at hand, the District has attempted to remove the possibility of any alleged harm to Jane Doe #1 by implementing the process set forth in its policy and instituting a host of supportive measures. The District's Board Policy 5514 requires a team of District staff to consider exceptions or accommodations on a case-by-case basis in consultation with the student, the student's parents, the Director of Student Services, the school psychologist, the school counselor, the classroom teacher, the building principal, and any other individuals the District deems appropriate. The intent behind this policy provision is to collaborate with the student, her parents, and a team of District staff to consider potential issues that may arise with regard to a student's request for restroom accommodations, to discuss all available options to remove any such harm, and to ensure the student can access District facilities safely. During this process, the District would take into

consideration all information provided by the student and/or her parents to address any possibility of harm to her and/or other students.

The District has made numerous attempts to collaborate with the Plaintiffs regarding Jane Doe #1's request to use the girls' restroom. Additionally, the District has offered and implemented an array of supportive measures to prevent and address any alleged harm to Jane Doe #1—notwithstanding Plaintiffs' refusal to meet with the District. Currently, a team of District staff provides support and accommodations for Jane Doe #1, including access to a trusted adult at any time during the summer school day, support from a trusted adult in response to violations of Board Policy 5514, the option to use the boys' restroom or a gender-neutral restroom, and a map and a tour of the building to ensure Jane Doe #1 is familiar with the location of these restrooms. [Dkt. #5-20, p. 2; Dkt. #5-21, p. 2; Dkt. #5-23, p. 2]. The District also initiated an evaluation of Jane Doe #1 under the Individuals with Disabilities Education Act ("IDEA") to determine whether Jane Doe #1's diagnoses of ADHD or anxiety may qualify her under other health impairment(s) and consider whether she requires specially designed instruction in, for example, coping skills or other non-academic areas. Through this evaluation or an evaluation under Section 504 of the Rehabilitation Act ("Section 504"), Plaintiffs would have the opportunity to provide any information related to gender dysphoria for the team's consideration, which could include ways to support Jane Doe #1 emotionally and socially as she navigates the school environment.

Plaintiffs have not responded to the District's attempts to ensure the absence of any potential harm, they have not provided consent for a Section 504 or IDEA evaluation, and they have not met with the personnel team to devise further mitigative efforts. Despite their refusal to engage with the District to consider and discuss Jane Doe #1's request to use the girls' restroom, the District has provided a number of supportive measures as listed above, and it will continue to

provide these supportive measures and any other measures deemed appropriate during the final two weeks of summer school. Through the aforementioned efforts, the District has already removed, and will continue to address, any alleged irreparable harm to the Plaintiff pending the present litigation. In fact, after meeting with trusted personnel regarding bathroom usage on one occasion, Jane Doe #1 was able to self-regulate, demonstrating the efficacy of the support measures in place and negating the notion that irreparable harm has occurred or would in the future. Further, Plaintiffs' failure to engage in the procedure set forth in the Board Policy 5514—which was formulated for the express purpose of preventing harm to students—invalidates Plaintiffs' allegations of irreparable harm.

Ultimately, Plaintiffs cannot argue Jane Doe #1 will face irreparable harm absent a temporary restraining order and/or preliminary injunction when they have not availed themselves of methods presented for the purpose of *preventing* this purported harm. The fact that only two weeks of summer school remain further negates such allegations of irreparable harm, as does evidence from the school counselor to refute that any such harm has occurred.

## II. FACTUAL DISSIMILARITIES AND LEGAL REALITIES DISTINGUISH THE PRESENT SITUATION *WHITAKER V. KENOSHA UNIFIED SCHOOL DISTRICT NO. 1*

Second, Plaintiffs fail to acknowledge facts and legal realities that distinguish the present situation from that which the Seventh Circuit examined in *Whitaker v. Kenosha Unified School District No. 1*, which cuts against their ability to succeed on the merits of their claims.

Plaintiffs argue Jane Doe #1 has suffered irreparable harm and has a likelihood of success on the merits based on their assertion that the facts of this case are directly aligned with those of *Whitaker*, 858 F.3d 1034 (7th Cir. 2017). While there are factual similarities between the cases, there are also several important differences. For example, and contrary to Plaintiffs' assertions, the age difference between Jane Doe #1 and the *Whitaker* complainant is significant. [Dkt. #5-1,

p. 13]. In *Whitaker*, the student at issue was a senior in high school; here, the Court is tasked with evaluating the school bathroom policy's impact on an 11-year-old student and similarly aged classmates. *Whitaker*, 858 F.3d at 1038. At 11 years old, students are beginning to discuss and witness the impact of puberty and sexuality; many students' bodies begin to change at this age, and their understanding of the world gains nuance. Moreover, 11-year-olds are less emotionally mature than 18-year-olds. These factual dissimilarities impact the analysis. In addition, the *Whitaker* plaintiff was receiving hormone replacement therapy and was diagnosed with vasovagal syncope, which access to a singular restroom greatly exacerbated. *Whitaker*, 858 F.3d at 1041. Here, the policy at issue would take such circumstances into account; indeed, an examination of each individual student's situation is an essential component of Board Policy 5514. In addition, Jane Doe #1 has access to more than one restroom and various supplemental supports, and only two weeks of summer school remain. These facts likewise affect the legal analysis, creating greater distance between *Whitaker* and the instant dispute.

Additionally, the current legal landscape differs considerably from that of 2017 (when the Seventh Circuit decided *Whitaker*), which thereby lessens the likelihood that Plaintiffs will succeed on the merits of their claims. For example, a recent Eleventh Circuit case has created a split among the federal appellate courts, setting the stage for resolution at the Supreme Court. *See Adams v. School Board of St. Johns County*, 968 F. 3d 1286 (11th Cir. 2022).[1]

Further, a key component of the Eleventh Circuit's opinion lends considerable support to the District's position and weakens that of Plaintiffs. The majority opinion's analysis of the

---

[1] Consideration of the Eleventh Circuit's decision in *Adams* is particularly relevant given the Seventh Circuit's heavy reliance on Eleventh Circuit decisions in *Whitaker*. Twice, the *Whitaker* court cited *Glenn v. Brumby*, 663 F.3d 1312 (11th Cir. 2011) in support of its sex-stereotyping theory. *Whitaker*, 858 F.3d at 1048, 1051. The court even relied upon an unpublished Eleventh Circuit decision: *Chavez v. Credit Nation Auto Sales, LLC*, 641 Fed. Appx. 883 (11th Cir. 2016) (unpub.). *Whitaker*, 858 F.3d at 1048.

12
Case 2:23-cv-00876-LA   Filed 07/04/23   Page 12 of 15   Document 9

plaintiff's claims relied on statutory and regulatory carveouts, which, it said, foreclosed such claims. Specifically, the majority pointed to the following language in Title IX: "[N]othing contained [in Chapter 38] shall be construed to prohibit any educational institution receiving funds under this Act, from maintaining separate living facilities for the different sexes." 20 U.S.C. § 1686. In addition, the Court referenced Title IX's implementing regulations, which allow for "separate toilet[s], locker room[s], and shower facilities on the basis of sex." 34 C.F.R. § 106.33. While guidance from the Obama Administration required schools to allow transgender students access to facilities consistent with their gender identity notwithstanding 34 CFR § 106.33, the Trump Administration withdrew and rescinded the prior administration's guidance on this topic, and the Biden Administration has not explicitly taken the Obama Administration's stance on the bathroom issue. *See Dear Colleague Letter on Transgender Students*, U.S. Department of Justice and U.S. Department of Education (May 12, 2016) (rescinded); *see also Dear Colleague Letter*, U.S. Department of Justice and U.S. Department of Education (February 22, 2017); *see generally* Executive Order on Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation (January 20, 2021).

Therefore, the following all weaken Plaintiffs' likelihood of succeeding on the merits:

- The Trump-era Guidance and its impact on the rationales set forth in the 2015 and 2016 Obama Administration letters;

- The *Auer v. Robbins* deference due these or other non-revoked prior Departmental interpretations of Title IX;

- The interrelationship between Title IX and the Regulation regarding the meaning of "sex" when applied to transgender students and their use of common school bathrooms; and

- The current makeup of the Supreme Court.

**III.    A TEMPORARY RESTRAINING ORDER IS AN UNFIT REMEDY FOR THE CASE AT BAR.**

Finally, and contrary to their assertions, Plaintiffs do not seek a preliminary injunction in order to "preserve the status quo pending a final hearing on the merits." *American Hospital Ass'n v. Harris*, 625 F.2d 1328, 1330 (7th Cir. 1980). Rather, Plaintiffs ask that this Court:

> [R]estrain and enjoin Defendants and their employees, agents, and representatives . . . as soon as is reasonably practicable, and thereafter during the pendency of this litigation, from:
>
> > (1) enforcing against Plaintiff any policy, practice, or custom of the District that denies Plaintiff access to girls' restrooms at school and school-sponsored events; and
> > (2) taking any formal or informal disciplinary action against Plaintiff for using girls' restrooms at school and school-sponsored events.

[Dkt. #5, p. 2]. Affirmatively "restraining" or "enjoining" Defendants from enforcing school policies is certainly not "maintaining the status quo." Instead, any such order would represent a departure from established District protocol through which Plaintiffs seek to *upend* the status quo. This is not the purpose of a preliminary injunction, which is an "extraordinary remedy" that "is never awarded as a matter of right." *Whitaker*, 858 F.3d at 1044.

Further, the District has offered—and Plaintiffs have not availed themselves of—less drastic solutions to effectively address the present situation. For example, the District repeatedly offered to meet with Jane Doe #2 to discuss additional supports faculty and staff could implement in order to make Jane Doe #1 feel more comfortable. In addition, the District identified specific personnel to act as "trusted adults" for Jane Doe #1 throughout the school day; took her on a tour of the high school to ensure she knew where the single-user, gender-neutral facilities were in relation to her classrooms; and suggested further IDEA and/or Section 504 evaluations for the purpose of determining supplemental means of lending Jane Doe #1 support. Thus, less "extraordinary" remedies were available to Plaintiffs'—they simply did not take advantage of the alternatives at their disposal. Accordingly, the requested relief is inappropriate in this instance.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request the Court deny Plaintiffs' request for a temporary restraining order and preliminary injunction.

Dated this 4th day of July, 2023.

Respectfully Submitted,

BUELOW VETTER BUIKEMA OLSON
& VLIET, LLC

/s/ Joel S. Aziere
Joel S. Aziere (WI Bar No. 1030823)
jaziere@buelowvetter.com
Corinne T. Duffy (WI Bar No. 1115664)
cduffy@buelowvetter.com
Buelow Vetter Buikema Olson & Vliet, LLC
20855 Watertown Road, Suite 200
Waukesha, Wisconsin 53186
Telephone: (262) 364-0250
Facsimile: (262) 364-0270

*Attorneys for Defendants Mukwonago Area School District and Joseph Koch*