# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JANE DOE #1, a minor, by her mother and next friend, JANE DOE #2,**
      Plaintiff,

    v.                                        Case No. 23-C-0876

**MUKWONAGO AREA SCHOOL DISTRICT and JOE KOCH, in his official capacity as Superintendent of the Mukwonago Area School District,**
      Defendants.

## DECISION AND ORDER

Plaintiff Jane Doe #1,[1] an eleven-year-old transgender girl who attends school within the Mukwonago Area School District ("MASD"), brings this action against the district and its superintendent. She alleges that defendants have recently adopted a policy that prohibits her from using the girls' bathrooms at school. Under the policy, plaintiff must use either the boys' bathroom or designated bathrooms in administrative areas of the school that the district regards as gender-neutral. Plaintiff contends that enforcing this policy is a form of discrimination based on sex that is prohibited by both Title IX of the Education Amendments of 1972 and the Equal Protection Clause of the Fourteenth Amendment.

Along with her complaint, plaintiff filed a motion for a temporary restraining order and a preliminary injunction. In a prior order, I granted the motion for a temporary

---

[1] Plaintiff has sought permission to litigate under a pseudonym because she is a minor. See Fed. R. Civ. P. 5.2(a). The court will grant such permission. Plaintiff's mother is also referred to as a Jane Doe to avoid revealing plaintiff's identity.

restraining order. In this order, I address plaintiff's motion for a preliminary injunction and more fully address the parties' arguments.

## I. BACKGROUND

Plaintiff is eleven years old and, in the fall, will enter the sixth grade at Prairie View Elementary School, an MASD school. Plaintiff is transgender. Although she was assigned male at birth, she expressed to her mother from a very young age that she saw herself as a girl. She began presenting and living as a girl at home when she was three years old. She began publicly presenting as a girl in first grade at the elementary school she attended prior to moving into the MASD. She began using female pronouns, grew out her hair, began wearing traditional girls' clothing, and adopted a more feminine name. Plaintiff has been diagnosed with gender dysphoria by a medical doctor and is under the care of a therapist for emotional and psychological support.

When she was entering third grade, plaintiff and her family moved to Waukesha County, and her parents enrolled her at Prairie View. Teachers and administrators at the school were supportive of plaintiff's transgender status. They referred to her by her feminine nickname, used female pronouns, and allowed her to use the girls' restrooms. This supportive stance continued through plaintiff's third- and fourth-grade years, and through most of fifth grade. Just like other female students, plaintiff participated in girls' groups whenever school activities were separated by gender. She also used the girls' bathrooms during the nearly three years she had attended Prairie View. Her use of the girls' bathrooms did not cause any disruption or concern during this period.

Around early April 2023, Prairie View's principal told plaintiff's mother that she had begun receiving phone calls from parents of other students expressing concern about

2

plaintiff's bathroom use at school. The principal also told plaintiff's mother that some parents and other residents of Waukesha County had created a Facebook group called "Mukwonago Parents for Normal Education." Group members were writing posts claiming that plaintiff was dangerous and that her parents might be pedophiles.

On May 15, 2023, the MASD school board held a closed executive meeting and discussed plaintiff's bathroom use and raised the possibility of requiring her to use a bathroom designated solely for transgender students or a single-occupancy, gender-neutral restroom. Plaintiff's mother attended part of the closed meeting and insisted that her daughter had the right to use the girls' bathroom. She explained that the board's proposed options would single plaintiff out from her peers, force her to reveal to others that she was transgender without her consent, and stigmatize her. The board did not make a decision that night but told plaintiff's mother that it was "stuck between a rock and a hard place" in that it could either upset parents who were opposed to plaintiff's presence and bathroom use at school by continuing to treat plaintiff as it had for the past three years or could be sued by plaintiff's family if it changed course and banned plaintiff from the girls' bathrooms.

On May 22, 2023, the board held a public meeting at which around eight members of the public spoke against plaintiff's using the girls' bathroom. As far as the record reveals, no member of the public pointed to any specific danger posed by plaintiff's continuing to use the girls' bathroom. Rather, the commenters "spoke angrily about transgender students' bathroom usage and complained about a 'boy' using the girls' restroom." (Decl. of Jane Doe #2 ¶ 17.) After the meeting, then-superintendent Shawn McNulty told plaintiff's mother that plaintiff could continue using the girls' bathroom if she

3

provided a doctor's note confirming her gender dysphoria diagnosis. Plaintiff's mother promptly provided the doctor's note, and plaintiff continued using the girls' restroom at Prairie View.

However, on May 23, 2023, the president of the school board sent the following email to parents and students in the district:

> During the School Board meeting on May 22, 2023, a number of residents . . . voiced concerns over bathroom usage in our school district. The School Board of the [MASD] affirms its position that students should use the locker rooms and bathrooms of their sex at birth. The School Board directs administration to review any current accommodation plans, create a formal team-based process to address any gender-based accommodation requests, and implement plans accordingly. The School Board will develop policy during the summer of 2023 to address bathroom and locker room accommodation requests to be implemented prior to the start of the 2023–24 school year.

(ECF No. 5-3.)

Later that week, plaintiff's mother received a call from Christine Bowden, MASD's Director of Pupil Services, who told plaintiff's mother that she wanted to refer plaintiff for a special-education assessment based on her ADHD and anxiety diagnoses. Plaintiff's mother was confused about why the school was raising the possibility of special education at this time, when plaintiff was doing well at school and did not need additional support for ADHD or anxiety. Plaintiff's mother thought that this might be a form of retaliation for her opposition to the district's new stance on plaintiff's bathroom usage, and she did not consent to the referral. Bowden also told plaintiff's mother that MASD intended to develop a "Gender Support Plan," which she said would allow plaintiff to be called by her preferred name, would "put privacy policies in place," and give plaintiff a "support ladder" to use in the event of a problem. (Decl. of Jane Doe #2 ¶ 22.) Plaintiff's mother was again confused, as students were already allowed to be called by their preferred names, had

4

privacy rights, and were aware of how to contact support staff in the event of problems. Nonetheless, plaintiff's mother told Bowden to let her know when the district had an actual plan to discuss. After the call, Bowden sent plaintiff's mother paperwork relating to the special-education referral. The paperwork related to ADHD and anxiety and made no reference to gender dysphoria. Because plaintiff's mother did not believe that plaintiff needed additional support for her ADHD and anxiety, she declined the referral.

Plaintiff is enrolled in a summer-school program known as MASD Summer Adventures that began on June 19, 2023. She had attended the same program, which is held at Mukwonago High School, over the previous two summers. During those summers, plaintiff used the girls' restrooms near her classes without incident. However, on June 16, 2023, plaintiff's mother received an email that contained a letter to her from Joe Koch, the new superintendent of MASD. It provided in relevant part:

> On May 23, 2023, the school board released the attached communication regarding students using the restrooms and locker rooms of their assigned sex at birth. As a result, [Jane Doe #1] may use a gender-neutral or male bathroom starting on the first day of summer school, Monday June 19th.
>
> If [Jane Doe #1] wishes to access a gender-neutral bathroom, they are located in the main office entering through the AP door and the health room on the first floor. We can provide a map identifying the location of [Jane Doe #1's] summer school classes and the nearest staircases to the restrooms, as well as a staff-led review of the pathways to those restrooms on the first day of summer school.

(ECF No. 5-5.) Plaintiff's mother told plaintiff about the letter, and she became upset and confused.

When plaintiff began summer school, she used the girls' bathroom as usual. However, by June 22, 2023, it was apparent that MASD was monitoring plaintiff's bathroom usage. On that day, plaintiff's mother received an email from the school district

5

reminding her of the new policy and noting that plaintiff was seen using the girls' bathroom during summer school. The school also sent plaintiff's mother a map showing the locations of the bathrooms the school regarded as gender-neutral. These bathrooms are located farther from plaintiff's classes than the girls' bathrooms that other girls at the school use. Moreover, the bathrooms in the administrative office are not actually gender-neutral student bathrooms. They are meant to be used by adult administrative staff and are separately labeled male and female.

On multiple occasions during summer school, plaintiff has been pulled out of class and taken to the principal's office in response to her using the girls' bathroom. During these interactions, staff remind plaintiff of the school's expectation that she use only the boys' bathrooms or the bathrooms in the administrative office and health room. Plaintiff finds these interactions upsetting, as they involve her being told that she must use bathrooms that the other children do not use or must use boys' bathrooms when she is not a boy. An email that plaintiff sent to her mother from school highlights how the school's policy has affected her:

> Mrs. Shultz, and the principal just brought me into the special Ed office to just give me a "Reminder" that "The school board has expectations" (😞). And that I have to use the boys' bathroom or a gender neutral restroom 😭😭😭. I think I need to come home, and the school is going to call you as well. So Please come pick me up **BEFORE** they call please. I am trying to hold back my emotions. So please hurry! 😭😭😭😭😭😭

(ECF No. 5-10.)

Plaintiff's mother is concerned that if the school district continues to enforce its bathroom policy during summer school, plaintiff will begin avoiding the bathrooms at school altogether. Such behavior might be physically harmful to plaintiff, as she has been

6

experiencing gastrointestinal issues and has been advised by her doctor that she should not delay using the bathroom.

On June 26, 2023, MASD adopted a formal bathroom policy for the district, known as Policy 5514. It provides:

> The Board believes students should feel safe and secure in the school environment, and the Board respects their right to privacy as it pertains to the use of District facilities. To that end, except as otherwise required by law, students shall use restroom and locker room facilities on District property and at District-sponsored events according to each student's original sex assigned at birth.
>
> Student and/or parent requests for an exception or accommodation to this policy shall be considered by a team of District staff on a case-by-case basis in consultation with the student, the student's parents, the Director of Student Services, the school psychologist, the school counselor, the classroom teacher, the building principal, and any other individuals the District deems appropriate. All decisions relating to such requests will take into consideration the safety and privacy of all students.
>
> Accommodations for a diagnosis of gender dysphoria shall be addressed in accordance with Section 504 of the Rehabilitation Act of 1973, and the District's corresponding procedures for developing Section 504 Plans.
>
> The Administration shall develop administrative guidelines for the implementation of this policy and the provisions herein.

(ECF No. 5-16.)

Through counsel, plaintiff's mother has asked the district to restore plaintiffs' access to the girls' bathrooms without litigation. Plaintiff's lawyers wrote a letter to the district in which they explained that its policy contravened Title IX and the Equal Protection Clause, as the Seventh Circuit interpreted those provisions of law in *Whitaker v. Kenosha Unified School District*, 858 F.3d 1034 (7th Cir. 2017). The district's counsel responded to the letter and did not dispute that its policy was inconsistent with *Whitaker*. However, counsel noted that the district's policy allowed for accommodations and exceptions, and

that the district had been trying to accommodate plaintiff by providing her with access to a "trusted adult" while at school and by allowing her to use the boys' bathroom or the bathrooms in the administrative office and health room. (ECF No. 5-14.) Counsel also noted the school's attempt to assess plaintiff for special-education services. Counsel ended his letter by stating that the district wished to "engage with the family and carry out the processes outlined in its policy." (*Id.*) But counsel did not suggest that the district would consider making a true "exception" to its policy for plaintiff by allowing her to continue using the girls' restrooms as she had been doing for the last three years.

On June 29, 2023, plaintiff's counsel responded to the district's letter and indicated that plaintiff would file a lawsuit and seek an emergency restraining order if the school did not agree to temporarily suspend enforcement of its policy while the parties discussed the possibility of a non-judicial resolution. Plaintiff's counsel asked the district to inform them immediately if it was willing to agree to temporarily suspend the new policy while the parties had further discussions. Defense counsel did not respond to plaintiff's request, and plaintiff filed this lawsuit at the end of the day on June 30, 2023.

Plaintiff's complaint alleges that the district's refusal to allow her to continue using the girls' bathrooms violates both Title IX and the Equal Protection Clause. Along with her complaint, plaintiff filed a combined motion for a temporary restraining order and a preliminary injunction. Both motions seek an order restraining the district from: (1) enforcing against plaintiff any policy, practice, or custom that denies plaintiff access to girls' restrooms at school and school-sponsored events; and (2) taking any formal or informal disciplinary action against plaintiff for using girls' restrooms at school and school-sponsored events. The factual assertions underlying these motions are supported by

8

declarations and exhibits. The district filed a written response to both motions on July 4, 2023. The district did not submit its own declarations and relies on many of the same exhibits that plaintiff included with her own motion. Plaintiff filed a reply brief on July 5, 2023. No party has asked for an evidentiary hearing on the motions.

In a short order issued on the morning of July 6, 2023, I granted plaintiff's motion for a temporary restraining order. In the same order, I noted that I would take the motion for a preliminary injunction under advisement and issue a more detailed opinion on that motion soon. I address the motion for a preliminary injunction in this opinion.

## II. DISCUSSION

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 20 (2008). "The first step in the analysis requires a plaintiff to 'demonstrate that [his] claim has some likelihood of success on the merits, not merely a better than negligible chance.'" *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 792 (7th Cir. 2022) (quoting *Mays v. Dart*, 974 F.3d 810, 822 (7th Cir. 2020)). In assessing the balance of equities, "the court must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Mays*, 974 F.3d at 818. This balancing process involves a "sliding scale" approach: "the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Id.*

9

### A. Likelihood of Success on the Merits

Plaintiff's claims arise under Title IX and the Equal Protection Clause of the Fourteenth Amendment. Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance. . . ." 20 U.S.C. § 1681(a). The parties agree that MASD receives federal funds and is a covered institution. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). It protects against intentional and arbitrary discrimination. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). Generally, state action is presumed to be lawful and will be upheld if the classification drawn by the statute is rationally related to a legitimate state interest. *City of Cleburne*, 473 U.S. at 440. This rational-basis test, however, does not apply when a classification is based on sex. *Whitaker*, 858 F.3d at 1050. When a sex-based classification is used, the burden rests with the state to demonstrate that its proffered justification is "exceedingly persuasive." *United States v. Virginia*, 518 U.S. 515, 533 (1996). This requires the state to show that the "classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *Id.* (internal quotation marks omitted). It is not sufficient to provide a hypothesized or *post hoc* justification created in response to litigation. *Whitaker*, 858 F.3d at 1050. Nor may the justification be based upon overbroad generalizations about sex. *Id.* Instead, the justification must be genuine. *Id.*

10

In *Whitaker*, the Seventh Circuit reviewed a district court's decision to issue a preliminary injunction to a transgender high-school student who alleged that the school's refusal to allow him to use the boys' restroom violated both Title IX and the Equal Protection Clause. Under the likelihood-of-success-on-the-merits element, the Seventh Circuit interpreted both Title IX and the Equal Protection Clause to extend protection to transgender students who wish to use the school bathroom that matches their gender identity. With respect to Title IX, the court held that "[a] policy that requires an individual to use a bathroom that does not conform with his or her gender identity punishes that individual for his or her gender non-conformance, which in turn violates Title IX." *Whitaker*, 858 F.3d at 1049. Similarly, the court held that subjecting a transgender student "to different rules, sanctions, and treatment than non-transgender students" violated Title IX. *Id.* The court held that providing "a gender-neutral alternative" did not relieve the school district from liability under Title IX because it was the policy itself that violated Title IX. *Id.* at 1050.

With respect to the Equal Protection Clause, the court held that a school district's deciding which bathroom a student may use based upon the sex listed on the student's birth certificate was "inherently based upon a sex-classification" and that therefore heightened review applied. *Id.* at 1051. The court further held that the school district had failed to provide a justification for its sex-based policy that was exceedingly persuasive. *Id.* at 1051–52. The justification that the district had offered was that the policy was necessary to protect the privacy rights of all students. *Id.* at 1052. The court rejected this justification on the ground that it was "based upon sheer conjecture and abstraction." *Id.* at 1052. The court noted that the plaintiff had used the boys' bathroom at school for nearly

11

six months without incident. *Id.* Further, the court deemed complaints from a teacher, one parent, and "several community members" insufficient to show that the policy was necessary to protect the privacy rights of all students. *Id.* Finally, the court noted that the school's policy "d[id] nothing to protect the privacy rights of each individual student vis-à-vis students who share similar anatomy and . . . ignore[d] the practical reality of how [the plaintiff], as a transgender boy, use[d] the bathroom: by entering a stall and closing the door." *Id.* The court continued:

> A transgender student's presence in the restroom provides no more of a risk to other students' privacy rights than the presence of an overly curious student of the same biological sex who decides to sneak glances at his or her classmates performing their bodily functions. Or for that matter, any other student who uses the bathroom at the same time. Common sense tells us that the communal restroom is a place where individuals act in a discreet manner to protect their privacy and those who have true privacy concerns are able to utilize a stall. Nothing in the record suggests that the bathrooms at Tremper High School are particularly susceptible to an intrusion upon an individual's privacy.

*Id.*

Obviously, the decision in *Whitaker* is highly relevant here. First, it establishes the legal principle that a policy preventing a transgender student from using the bathroom that matches the student's gender identity is a form of discrimination on the basis of sex that violates Title IX, and that providing a gender-neutral alternative does not cure the discrimination. Second, it establishes the legal principle that such a policy is subject to heightened scrutiny under the Equal Protection Clause and that a school's unsubstantiated claim that the policy is necessary to protect the privacy of all students will not satisfy the school's burden to provide an "exceedingly persuasive" justification for the policy. These legal principles are controlling here.

12

Further, this case is not factually distinguishable from *Whitaker* in a way that diminishes plaintiff's likelihood of success. Defendants contend that this case is different because, while *Whitaker* involved a high-school student, this case involves an eleven-year-old student in the fifth and sixth grades. But defendants point to nothing in the court's Title IX or Equal Protection analysis that turned on the age of the student. Nor do defendants develop an argument showing that Title IX allows elementary schools to engage in types of sex-based discrimination that high schools may not. At most, the age difference might be relevant to whether defendants have provided an "exceedingly persuasive" justification for their discrimination that satisfies the Equal Protection Clause. But defendants do not develop an argument that specifically mentions the Equal Protection Clause or the "exceedingly persuasive" standard.

What defendants do say about the age difference between this case and *Whitaker* is that, "[a]t 11 years old, students are beginning to discuss and witness the impact of puberty and sexuality; many students' bodies begin to change at this age, and their understanding of the world gains nuance." (Br. in Opp. at 12.) Defendants also note that "11-year-olds are less emotionally mature than 18-year-olds." (*Id.*) However, defendants do not explain how these facts about early adolescence justify preventing an eleven-year-old transgender girl from using the girls' bathroom. Presumably, girls in the fifth and sixth grades at MASD use the bathroom in the same manner as the high-school student in *Whitaker*: by entering a stall and closing the door. 858 F.3d at 1052. Thus, each student will naturally protect her own privacy. Moreover, as in *Whitaker*, the record here discloses no way in which a transgender student's presence in the restroom provides a greater risk

13

to other students' privacy rights "than the presence of an overly curious student of the same biological sex." *Id.*[2]

Defendants also contend that I should somehow discount the Seventh Circuit's decision in *Whitaker* because the "legal landscape" is allegedly different today than it was in 2017, when *Whitaker* was decided. (Br. in Opp. at 12.) Here, defendants primarily rely on the fact that the Eleventh Circuit has taken a different view of how Title IX and the Equal Protection Clause apply to a school policy that prevents a transgender student from using a bathroom that matches his or her gender identity. *See Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791 (11th Cir. 2022). However, in a hierarchical court system, decisions of a superior court are authoritative on inferior courts, and therefore a district court in the Seventh Circuit must follow the decisions of that circuit. *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004); *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 123 (7th Cir. 1987). Thus, I am bound by the Seventh Circuit's interpretations and applications of Title IX and the Equal Protection Clause in *Whitaker*. And, for the reasons explained above, under *Whitaker*, plaintiff has a substantial likelihood of success on the merits.

**B.    Plaintiff's Irreparable Harm**

To obtain a preliminary injunction, plaintiff must also establish that she will likely suffer irreparable harm if the injunction is not granted. *Whitaker*, 858 F.3d at 1044–45. Harm is irreparable if legal remedies are inadequate to cure it. *Life Spine, Inc. v. Aegis*

---

[2] I note that Policy 5514 states that the MASD adopted it, in part, to protect "the safety . . . of all students." (ECF No. 5-16.) Defendants do not raise this safety justification in their brief, and the record discloses no way in which plaintiff's use of the girls' restroom affects the safety of other students.

14

*Spine, Inc.*, 8 F.4th 531, 545 (7th Cir. 2021). "Inadequate 'does not mean wholly ineffectual; rather, the remedy must be seriously deficient as compared to the harm suffered.'" *Id.* (quoting *Foodcomm Int'l v. Barry*, 328 F.3d 300, 305 (7th Cir. 2003)).

The record establishes that plaintiff will suffer irreparable harm in the absence of an injunction. Plaintiff's mother has submitted a declaration in which she describes the effect that MASD's policy has had on plaintiff during the short time it was enforced. (ECF No. 30 & 32 (redacted version).) She explains that, when school employees told plaintiff that she could no longer use the girls' bathrooms, plaintiff became "extremely distressed and upset" and began having "thoughts of self-harm." (*Id.* ¶ 25.) Plaintiff's mother also explains that plaintiff found it "devastating" to be told that she had to use separate bathrooms from the other children or use the boys' bathrooms when she is not a boy. (*Id.* ¶ 27.) And she describes how enforcement of the school's policy has had a stigmatizing and ostracizing effect on plaintiff that has diminished her academic motivation and ability to learn. (*Id.* ¶¶ 32–35.) Plaintiff's own emails to her mother, which she sent while at school, confirm that the policy has caused emotional and psychological harms and that it will continue to do so if not enjoined. (ECF Nos. 22 & 24.) Finally, plaintiff's mother notes that plaintiff has been experiencing gastrointestinal issues that could be exacerbated if plaintiff decided to avoid using the bathroom as a result of defendants' policy. (ECF No. 32 ¶ 28.) The Seventh Circuit has recognized that physical, psychological, and educational harms such as these are irreparable and that monetary damages would be an inadequate remedy. *Int'l Assoc. of Firefighters, Local 365 v. City of East Chicago*, 56 F.4th 437, 452 (7th Cir. 2022); *Whitaker*, 858 F.3d at 1045–46; *Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 853 (7th Cir. 1999). Moreover, where, as here,

the deprivation of a constitutional right is ongoing, a court will ordinarily presume irreparable harm. *See, e.g., Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011).

Defendants do not dispute that the harms described by plaintiff's mother are generally considered irreparable. Instead, they contend that plaintiff would not suffer these harms if her family engaged in the process alluded to in Policy 5514 in which a student's parents may meet with various school staff members and administrators to have them consider the parents' or student's "requests for an exception or accommodation." (ECF No. 5-16.) However, defendants do not represent that this process could result in the district's making a true "exception" to the policy that would allow plaintiff to use the girls' bathroom. Instead, they seem to suggest that, through the process, the district might be able to alleviate the harmful psychological effects of its own discrimination. The only potential accommodations that defendants describe are access to a "trusted adult," the option to use the boys' restroom or a gender-neutral restroom, providing a map of the building to enable plaintiff to find the location of the restrooms the district regards as gender-neutral, and evaluating plaintiff for special-education services. (Br. in Opp. at 10.)

The existence of this accommodation process does not lessen the likelihood that plaintiff will suffer irreparable harm without an injunction. It is the district's policy of illegal discrimination that is the source of plaintiff's irreparable harm, and no amount of "accommodation" could remedy the harmful psychological effects of that discrimination. Defendants are depriving plaintiff of a basic human need that is central to her identity. The only way to prevent this harm is to end the discrimination. In any event, the record shows that plaintiff's mother has thoroughly engaged with the school and the district about plaintiff's needs and has already received whatever accommodations the district is willing

16

to provide, including the map and access to a trusted adult. Those accommodations did not eliminate plaintiff's suffering. Although plaintiff's mother declined the district's offer to evaluate plaintiff for special-education services, that referral could not have alleviated the psychological effects of defendants' illegal discrimination.

Accordingly, I find that plaintiff is likely to suffer substantial irreparable harm in the absence of a preliminary injunction.

**C.  Balance of Harms and Public Interest**

What remains is to determine whether granting an injunction will harm defendants or the public as a whole. *Whitaker*, 858 F.3d at 1054. In their brief, defendants do not claim that they or the public would suffer irreparable harm if the injunction were granted. Moreover, the Seventh Circuit's application of these factors in *Whitaker* is controlling here. In *Whitaker*, the Seventh Circuit found an absence of harm to the district or the public based on the fact that the student had used the boys' bathroom at school for six months without incident. *Id.* at 1054. Here, plaintiff used the girls' bathroom for nearly *three years* without incident. Likewise, as in *Whitaker*, here the school has not presented evidence that plaintiff's presence in the girls' restroom has ever resulted in the invasion of any student's privacy. *Id.*

In *Whitaker*, the Seventh Circuit also discussed evidence submitted by school administrators from around the country showing that, in their experience, "the frequently-raised and hypothetical concerns about a policy that permits a student to utilize a bathroom consistent with his or her gender identity have simply not materialized." *Id.* at 1055. These administrators reported, instead, that "in their combined experience, all students' needs are best served when students are treated equally." *Id.* Further, the

17

administrators reported that, although some had worried that "implementing an inclusive policy will result in the demise of gender-segregated facilities in schools," that has not been the case. *Id.* Instead, the administrators found that "allowing transgender students to use facilities that align with their gender identity has actually reinforced the concept of separate facilities for boys and girls." *Id.* Based on this evidence, the Seventh Circuit determined that neither the school district nor the public would be harmed by allowing the plaintiff to continue using the bathroom that matched his gender identity. *Id.*

In the present case, defendants have not submitted evidence contradicting the experience of other schools as reflected in *Whitaker*. And because this case is otherwise indistinguishable from *Whitaker* with respect to the balance of harms and public interest, I find that those factors weigh strongly in favor of granting an injunction.

D.     **Defendants' Argument Concerning Status Quo**

Before concluding, I address defendants' argument that an injunction should not issue because it would change, rather than preserve, the status quo. Defendants claim that the status quo was the district's rule that plaintiff could not use the girls' bathrooms, which it adopted a few days before plaintiff filed this suit and sought preliminary relief. (Br. in Opp. at 14–15.)

Initially, I note that while some cases state that the purpose of a preliminary injunction is to "preserve the status quo," this formula is not part of the legal standard for deciding whether to issue an injunction, and it has been criticized by the Seventh Circuit and others. *See Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 943–44 (7th Cir. 2006) (collecting criticism); *Praefke Auto Elec. & Battery Co., Inc. v. Tecumseh Prods. Co.*, 255 F.3d 460, 464 (7th Cir. 2001). Under the actual legal standard,

18

"[p]reliminary relief is properly sought only to avert irreparable harm to the moving party." *Chicago United*, 445 F.3d at 944. "Whether and in what sense the grant of relief would change or preserve some previous state of affairs is neither here nor there." *Id.*

In any event, when courts employ the status quo formula, what they are referring to is the state of affairs that existed "on the eve of the action that precipitated the dispute." *Int'l Bhd. of Teamsters Airline Div. v. Frontier Airlines, Inc.*, 628 F.3d 402, 405 (7th Cir. 2010). Under this understanding of the formula, granting plaintiff a preliminary injunction would preserve the status quo. For nearly three years, plaintiff was allowed to use the girls' bathrooms at schools within the MASD. It was the school district's decision to change course in June 2023 that altered the status quo and precipitated this dispute. Thus, to the extent that the status quo is at all relevant to whether plaintiff is entitled to an injunction, it favors issuance of the injunction.

### III. CONCLUSION

In sum, I find that plaintiff is likely to succeed on the merits of her claims, that she would suffer irreparable harm in the absence of an injunction, and that the balance of harms and the public interest favor issuance of an injunction. Accordingly, I will convert the temporary restraining order to a preliminary injunction. Further, I find that plaintiff is not required to post a bond or other security because there is no danger that defendants will incur damages from the injunction. *See Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 458 (7th Cir. 2010).

For the reasons stated, **IT IS ORDERED** that plaintiff's motion for a preliminary injunction (ECF No. 5) is **GRANTED**. The Mukwonago Area School District, Superintendent Joe Koch, and all officers, employees, and agents of defendants, are

19

hereby enjoined from: (1) enforcing against plaintiff any policy, practice, or custom that denies plaintiff access to girls' restrooms at school and school-sponsored events; and (2) taking any formal or informal disciplinary action against plaintiff for using girls' restrooms at school and school-sponsored events. To comply with Federal Rule of Civil Procedure 65(d)(1)(C)'s separate-document requirement, the court will issue a separate order embodying the injunction. *See MillerCoors LLC v. Anheuser-Busch Cos., LLC*, 940 F.3d 922, 922–23 (7th Cir. 2019).

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to file under seal (ECF No. 3) is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 11th day of July, 2023.

/s/Lynn Adelman
LYNN ADELMAN
United States District Judge