UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JANE DOE #1, a minor,
by her mother and next friend, JANE DOE #2,

   Plaintiffs,

  v.

               Case No.: 2:23-cv-876

MUKWONAGO AREA SCHOOL DISTRICT,
and JOSEPH KOCH, in his official capacity as
Superintendent of Mukwonago Area School District,

   Defendants.

**DEFENDANTS' SURREPLY BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO LIFT STAY AND MOTION FOR VOLUNTARY DISSOLUTION OF PRELIMINARY INJUNCTION**

**INTRODUCTION**

  Contrary to Plaintiff's assertions, nothing about the July 24, 2025, IEP team meeting was "highly irregular," "self-interested," or a "departure from the normal IEP process." Perhaps the most troubling aspects of these allegations penned by Attorney Alexa Milton is the fact Plaintiff's local counsel, Victoria Davis (whose name is on all pleadings in this case), is on the IEP Team, participated in the July 24, 2025, IEP team meeting, raised no issues about the meeting, and was part of the consensus resulting in the final IEP. It is difficult to understand why counsel located in Washington, D.C. is complaining about a process in which counsel located here in Milwaukee, Wisconsin participated. It certainly would appear Plaintiff's various counsel have different agendas. While local counsel is acting in accordance with the IDEA, Washington, D.C. counsel is seeking only to evade review by the Seventh Circuit.

1

Furthermore, Plaintiff's counsel' suggestion this Court proceed with litigation, which is based entirely on *Whitaker* and *Martinsville*, while the Seventh Circuit considers whether *Whitaker* and *Martinsville* are even good law following *Skrmetti*, is nonsensical. Keep in mind, in its original June 12, 2025, decision, the Seventh Circuit acknowledged the rationale of *Whitaker* and *Martinsville* are flawed and specifically agreed "the Eleventh Circuit's decision in *Adams v. St. Johns County School Board*, 57 F.4th 791 (11th Cir. 2022) (en banc), 'is closer to the mark.'" Then, on its own initiative, the Seventh Circuit vacated its June 12, 2025, decision and order and retained jurisdiction over the case, ordering the parties to brief whether the Seventh Circuit should overrule *Whitaker* and *Martinsville* in light of *Skrmetti*." The parties were also invited to address whether Board Policy 5514 is valid under (1) the Equal Protection Clause (2) Title IX. Given these indisputable facts, there is absolutely no basis for this Court to lift the current stay or engage in any further action until Seventh Circuit decides when the entire basis upon which this case rests will be overturned. Thus, Plaintiff's motions must be denied in their entirety.

## ARGUMENT

I. **PLAINTIFF'S REPLY BRIEF CONTAINS BLATANT MATERIAL MISREPRESENTATIONS OF LAW AND FACT REGARDING THE IDEA AND THE IEP PROCESS AND, AS SUCH, MUST BE STRICKEN OR REBUTTED.**

   A. **Plaintiff's Reply Brief Misrepresents the Frequency, Purpose, and Structure of IEP Meetings.**

Plaintiff's characterization of the July 24, 2025, IEP team meeting as "highly irregular," "self-interested," or a "departure from the normal IEP process" is wholly inaccurate and entirely inconsistent with federal law. While the IDEA requires Jane Doe #1's IEP team to review Jane Doe #1's IEP "not less than annually," it also requires review "periodically" and revisions "as appropriate to address" several circumstances. According to 20 U.S.C. § 1414(d)(4)(A):

> The local educational agency shall ensure that, subject to subparagraph (B), the IEP Team—
>
> (i) reviews the child's IEP periodically, but not less frequently than annually, to determine whether the annual goals for the child are being achieved; and
>
> (ii) revises the IEP as appropriate to address—
>
>> (I) any lack of expected progress toward the annual goals and in the general education curriculum, where appropriate;
>>
>> (II) the results of any reevaluation conducted under this section;
>>
>> (III) information about the child provided to, or by, the parents, as described in subsection (c)(1)(B);
>>
>> (IV) the child's anticipated needs; or
>>
>> (V) other matters.

Consistent with these requirements, the District convened Jane Doe #1's IEP team on July 24, 2025, to address "the child's anticipated needs" and "other matters." [Bowden Decl., ¶5]. According to the IDEA, IEP teams must consider and include in an IEP "the use of positive behavioral interventions and supports, and other strategies, to address [the] behavior [that impedes learning] and "measurable annual goals, including academic and functional goals, designed to meet the child's needs that result from the child's disability to enable the child to be involved in and make progress in the general education curriculum." *See* 20 U.S.C. § 1414(d)(3)(B)(i); *see also* 20 U.S.C. § 1414(d)(1)(a)(i)(II)(aa). On July 17, 2025, Kradwell School informed the District that Jane Doe #1 was absent from summer school and hospitalized inpatient for mental health treatment, which resulted in a School Wellness Action Plan (SWAP). [Bowden Decl., ¶6]. Therefore, Jane Doe #1's IEP team properly convened to consider incorporating relevant strategies from the SWAP and parent input into Jane Doe #1's IEP and the impact, if any, on continuing placement.

The IDEA further requires a student's IEP to include "a statement of the special education and related services and supplementary aids and services … and a statement of the program modifications or supports for school personnel that will be provided for the child to be involved in

3

and make progress in the general education curriculum … and to participate in extracurricular and other nonacademic activities." 20 U.S.C. § 1414(d)(1)(a)(i)(IV)(bb). Because the August 20, 2024, Resolution Agreement regarding Jane Doe #1's participation in nonacademic and extracurricular activities expired on August 1, 2025, the IDEA also required Jane Doe #1's IEP team to reconsider Jane Doe #1's continuing participation in such activities at the July 24, 2025, IEP meeting. [Bowden Decl., ¶7].

The IDEA does not require the District to schedule IEP team meetings "weeks in advance," and school districts often convene IEP meetings immediately to address "anticipated needs" and/or "other matters," including but not limited to a child's inpatient hospitalization for mental health treatment. [Bowden Decl., ¶8]. The District took required "steps to ensure that one or both of the parents of a child with a disability are present at each IEP Team meeting … including: (1) notifying parents of the meeting early enough to ensure that they will have an opportunity to attend; and (2) scheduling the meeting at a mutually agreed on time and place." 34 C.F.R. § 300.322. On July 22, 2025, the District's student services counsel and Plaintiff's counsel (Attorney Victoria Davis) conferred and confirmed the purpose of the meeting and mutual agreement to meet on July 24, 2025. After Plaintiff's counsel confirmed availability, the District sent a formal IEP Team Meeting Invitation to Jane Doe #1's parent. [Bowden Decl., ¶9]. Jane Doe #1's parent (i.e., Jane Doe #2) and Plaintiff's counsel (i.e., Attorney Davis) attended the July 24, 2025, IEP meeting and expressed no concerns before or during the IEP meeting regarding the scheduling process. [Bowden Decl., ¶10].

The IDEA does not require school districts to provide parents an IEP "draft" after the IEP meeting and before finalization. According to the IDEA, all changes to an IEP must be made by the IEP team in an IEP team meeting or through a written agreement with the parent to modify the

IEP outside of a meeting. *See* 20 U.S.C. § 1414(d)(3)(F). As a result, discussion of IEP contents or revisions outside an IEP team meeting and without the required written agreement (DPI Form 1-10, for example) are not permitted by law.

> **B.** **Plaintiff's Reply Brief Misrepresents the IEP Decision-Making Process.**

Plaintiff's statement that "there was no consensus among the members of Plaintiff's IEP team that she should gradually reintegrate into the District during the upcoming school year" [Dkt. #58, p. 5] is false. When asked to share her perspective regarding MASD activities, Jane Doe #1 expressed "mixed feelings" and did not want to discuss it. [Bowden Decl., ¶12]. Plaintiff's counsel (i.e., Attorney Davis) and Jane Doe #1's parent (i.e., Jane Doe #2) indicated their goal is for Jane Doe #1 to return to MASD through the SOAR program for the 2026-27 school year. [Bowden Decl., ¶13]. When Jane Doe #1 took a break from the IEP meeting, the remaining IEP team members engaged in a thoughtful conversation regarding the need for a gradual transition back to MASD during the 2025-26 school year to ensure a successful full-time return to the SOAR program the start of 2026-27. [Bowden Decl., ¶14]. This included consideration of activities Jane Doe #1 enjoys (such as theater, softball, and running) and utilizing time after Kradwell School's abbreviated school day to introduce Jane Doe #1 to the MASD environment and staff. [Bowden Decl. ¶15]. The IEP team specifically addressed the need for parent consent to exchange information with Jane Doe #1's therapist, ensuring collaboration with mental health providers regarding the plan for gradual re-entry. [Bowden Decl., ¶16].

Jane Doe #1's IEP team (including Doe #1's parent and Plaintiff's counsel) reached full consensus that, to support SOAR/MASD attendance in 2026-27, the team will explore gradual exposure to the MASD in 2025-26, discuss specifics at the August 20, 2025, IEP meeting, and continue the discussion in collaboration with Jane Doe #1's mental health provider throughout the school year. [Bowden Decl., ¶17]. Plaintiff's counsel (i.e., Attorney Davis) did not raise any

5

objections nor express any disagreement with Jane Doe #1's gradual access to MASD at any time before, during, or after the IEP team meeting. [Bowden Decl., ¶18].

If, however, Jane Doe #1's IEP team fails to reach consensus in the future, the IDEA does not grant the parent unilateral authority to determine Jane Doe #1's educational placement nor dictate the contents of Jane Doe #1's IEP. The District is solely and exclusively responsible for making a "free appropriate public education" available to Jane Doe #1. 20 U.S.C. § 1412(a)(1); 34 C.F.R. § 300.101(a). To safeguard the District's ability to fulfill this obligation, the U.S. Department of Education provides the following guidance where, but not as here, an IEP team fails to reach full consensus: "the public agency must determine the appropriate services and provide the parents with prior written notice of the agency's determinations regarding the child's educational program and of the parents' right to seek resolution of any disagreements by initiating an impartial due process hearing or filing a State complaint." *See Letter to Richards,* Office of Special Education Programs (January 7, 2010); *see also* Assistance to States for the Education of Children With Disabilities and Preschool Grants for Children With Disabilities, 71 Fed. Reg. 46661 (August 14, 2006); *see also* Information Update Bulletin 00.04, Wisconsin Department of Public Instruction (May 2000).

    **C.    Plaintiff's Claims of "Indefinite Placement" at Kradwell with "No Expectation of Return" Would be Illegal Under the IDEA.**

Plaintiff unbelievably asserts there is no reasonable expectation Jane Doe #1 will return to MASD for instruction, nor to participate in any activities or events, and that Jane Doe #1's IEP team placed Doe #1 in a restrictive alternative placement "indefinitely."

Jane Doe #1's IEP team did not and, according to the IDEA, cannot place Jane Doe #1 at Kradwell School "indefinitely." [Bowden Decl., ¶19]. Doing so would violate state and federal law, including but not limited to IDEA requirements to review the IEP (including placement)

6

periodically but at least annually and to place Jane Doe #1 in the least restrictive environment appropriate. *See* 20 U.S.C. § 1412(5)(A); *see also* 34 C.F.R. § 300.114(a)(2). Specifically, IDEA regulations require that,

> … to the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily. *Id.*

The U.S. Supreme Court further requires Jane Doe #1's IEP team to develop an IEP that is "appropriately ambitious in light of [the student's] circumstances…" *See Endrew F. v. Douglas County School District RE-1*, 137 S.Ct. 988 (2017).

Kradwell School is a school located on the campus of Aurora Psychiatric Hospital, maintains a 6:1 student to teacher ratio, provides individualized instruction to students with disabilities, and does not offer students a full day. Instead, Kradwell School provides four, one-hour academic classes and a study support class, which is far less than the seven-hour MASD school day. [Bowden Decl., ¶20]. By nature, Kradwell School is a far more restrictive educational environment than a traditional public school. *Id.* As a result, placing a child at Kradwell School "indefinitely" with "no expectation of return" for an entire school year violates the law and is educationally inappropriate. *Id.*

Consistent with best educational practice, the IDEA recognizes that neither children nor their educational programs remain static. The periodic IEP reviews and revisions discussed above ensure ongoing and continuing efforts to place children in less restrictive environments and to adjust goals accordingly. Jane Doe #1's July 24, 2025, IEP reflects the dynamic nature of Jane Doe #1 and Jane Doe #1's educational programming, including:

- the "need for contingency plans;"

7

- an intent to review and revise Jane Doe #1's behavior intervention plan consistent with the SWAP that resulted from inpatient treatment after gathering additional summer school data;
- concerns that "if [Jane Doe #1] continues to require intensive out-of-class support, it may exceed what Kradwell School is able to sustain during the school year;"
- confirmation the team "explored opportunities for peer connection" and will discuss specifics at the upcoming IEP meeting;
- acknowledgement that "the goal is to gradually reintegrate;" and
- ongoing consideration of "a potential pathway . . . [for] transitioning [Jane Doe #1] into the district's alternative education program."

D.  **Jane Doe #1's Continued Placement at Kradwell School is Currently at Risk.**

Jane Doe #1's continued placement at Kradwell School is far from guaranteed and, instead, it at risk. On May 20, 2025, following Jane Doe #1's IEP meeting, Kradwell School representatives met separately with the MASD Director of Student Services. During this meeting, Kradwell School representatives stated that, unless Jane Doe #1 demonstrated significant improvement in their environment, Kradwell School would not continue Jane Doe #1's placement during the 2025-26 school year. [Bowden Decl., ¶21]. Following this meeting, Mary Schulte, Director/Principal of Kradwell School, sent Bowden a follow-up email documenting the discussion. [Bowden Decl., Ex. 2]. Attached to that email was an early email from Kradwell Dean of Students to Jane Doe #2 advising Jane Doe #2 of Jane Doe #1's conduct. Said email states, "this underscores what we were talking about with her social cues and boundaries." [Bowden Decl., Ex. 2, p. 2]. This makes clear Jane Doe #2 was well aware of the issues Jane Doe #1 was having at Kradwell as those issues had been previously discussed.

On July 9, 2025, MASD learned of Jane Doe #1's extended absence from Kradwell due to an incident where Jane Doe #1 smashed her Tamagotchi, threatened to "murder the family" and threw a rock through a window. [Bowden Decl., Ex. 3, p. 1]. In addition, Kradwell noted issues

with Jane Doe #1 including "attention seeking comments, exaggerations, lying." [Bowden Decl., Ex. 3, p. 1]. This resulted in the aforementioned School Wellness Action Plan (SWAP).

On July 24, 2025, Jane Doe #1's IEP team (including a Kradwell School representative) reached consensus that Jane Doe #1 may attend Kradwell School at the start of the 2025-26 school year. Kradwell School representatives, however, expressed concern that if Jane Doe #1 continues to require intensive out-of-class support, Kradwell School cannot sustain Jane Doe #1's placement. [Ex. 1, p. 19; Bowden Decl., ¶22]. The IEP team recognized that possibility and "will consider a continuum of educational placements at her August 20, 2025, IEP team meeting, including her current placement at Kradwell School, and the need for contingency plans." [[Ex. 1, p. 18; Bowden Decl., ¶22].

Then on August 1, 2025, MASD learned of an additional behavior incident involving Jane Doe #1 at Kradwell. [Bowden Decl., Ex. 4]. This incident involved Jane Doe #1 again violating Kradwell's policies, of which Jane Doe #1 was well aware, further calling into question Jane Doe #1's continued attendance at Kradwell. [Bowden Decl., Ex. 4].

For the multiple reasons described above, and contrary to Plaintiff's assertions, Jane Doe #1's restrictive alternative placement at Kradwell School is not "indefinite," and the District will not accept the Plaintiff's invitation to inappropriately and illegally foreclose any expectation of Jane Doe #1's return during the 2025-26 school year.

II. **PLAINTIFF'S REPLY BRIEF FURTHER DEMONSTRATES PLAINTIFF'S COUNSEL FILED THE TWO MOTIONS IN BAD FAITH FOR THE PURPOSE OF EVADING REVIEW BY THE SEVENTH CIRCUIT COURT OF APPEALS AND IMPROPERLY PROLONGING THIS LITIGATION.**

When Plaintiff's counsel filed her two motions, she did not explain the impact said motions would have should they be granted. MASD explained said results and argued this evinced bad faith on the part of Plaintiff's counsel in filing the motions. [Dkt. #49]. Rather than challenging

these assertions, in Plaintiff's reply brief, Plaintiff's counsel embraces and emphasizes the unjustified and unnecessary expenditure of judicial resources that would result if the motions were granted. If there were any questions before, Plaintiff's reply brief makes clear the motions were filed in bad faith for the purpose of evading review by the Seventh Circuit and improperly prolonging this litigation.

> A. **Plaintiff's Counsel Seeks To Needlessly Expend The Resources Of This Court For No Legitimate Or Logical Purpose, Especially In Light Of The Fact The Seventh Circuit Itself Is Calling Into Question *Whitaker* And *Martinsville*.**

Plaintiff completely fails to address the fact both parties stipulated to a stay of all proceedings before this Court until a final decision by the Seventh Circuit and a return of this matter to the District Court. Plaintiff provides no basis for this Court to now reject the previously accepted stipulation. Instead, Plaintiff's counsel argues this Court should proceed with the case while the Seventh Circuit decides whether *Whitaker* and *Martinsville* remain good law in light of *Skrmetti*. [Dkt. #58, p. 7].

It is exceedingly difficult to ascertain the logic behind Plaintiff's counsel's argument. This is especially true in light of the action by the Seventh Circuit in this case. First, in its original June 12, 2025, decision, the Seventh Circuit acknowledged the rationale of *Whitaker* and *Martinsville* are flawed. The Seventh Court specifically agreed that "the Eleventh Circuit's decision in *Adams v. St. Johns County School Board*, 57 F.4th 791 (11th Cir. 2022) (en banc), 'is closer to the mark.'" *D.P. v. Mukwonago Area Sch. Dist.*, 140 F.4th 826 (7th Cir. 2025), *vacated by D.P. v. Mukwonago Area Sch. Dist.*, No. 23-2568, 2025 U.S. App. LEXIS 16097 (7th Cir. June 30, 2025).

Then, on its own initiative, the Seventh Circuit vacated its June 12, 2025, decision and order and retained jurisdiction over the case. [Dkt. #60]. The Seventh Circuit ordered the parties to brief "whether the court should overrule *Whitaker v. Kenosha Unified School District No. 1*

*Board of Education,* 858 F.3d 1034 (7th Cir. 2017), and *A.C. v. Metropolitan School District of Martinsville,* 75 F.4th 760 (7th Cir. 2023), in light of *Skrmetti*." [Dkt. #60]. The parties were also "invited to address whether, if the court overrules *Whitaker* and *Martinsville*, the challenged policy is valid under (1) the Equal Protection Clause in light of *Skrmetti*; and (2) Title IX in light of 20 U.S.C. § 1686, 34 C.F.R. § 106.33, and *Skrmetti*." [Dkt. #60].

Thus, this is not a situation in which a similar bathroom use policy is before the Seventh Circuit on appeal in another case and MASD is seeking to stay the proceedings pending a decision. In this case, the Seventh Circuit questioned *Whitaker* and *Martinsville* (yet decided not to rule on the merits of the case), then revoked its prior decision returning the case to the District Court, then retained jurisdiction to determine whether *Whitaker* and *Martinsville* are still good law after *Skmretti*, and finally directed the parties to address whether **Board Policy 5514** (*the specific bathroom policy at issue in this case*) runs afoul of Title IX and the Equal Protection Clause in light of *Skrmetti*. The Seventh Circuit has retained jurisdiction over this matter for the purpose of addressing the substantive issues in <u>this</u> case and to determine the validity of Board Policy 5514, the policy at issue in <u>this</u> case.

If there was ever a basis for imposing, let alone continuing a stay, this is it! Yet Plaintiff's counsel somehow claims judicial economy warrants the parties continue proceedings before this Honorable Court because "Defendants could appeal at the conclusion of trail court proceedings." [Dkt. #58, p. 8]. This is not just nonsensical, it evinces an exceptional level of bad faith.

There is no legal or logical reason to entertain Plaintiff's motions. As such, they must be dismissed in their entirety.

### B. Plaintiff's Counsel's Hypothetical Regarding a Second Lawsuit Challenging Policy 5514 Illustrates Why the Stay Should Remain in Place.

In Plaintiff's reply brief, Plaintiff's counsel proffers the following hypothetical: "Suppose that another transgender Mukwonago student filed a case tomorrow challenging the bathroom access policy." [Dkt. #58, p. 8]. Plaintiff's counsel claims "MASD would not be entitled to Seventh Circuit consideration of the merits at the outset." [*Id*.]. However, that is not entirely true. If, in bringing this second claim, said transgender student sought a preliminary injunction (as was done in this case), and the district court granted said preliminary injunction based on *Whitaker* and *Martinsville* (as was done in this case), MASD would be entitled to Seventh Circuit consideration of the merits at the outset (as was done in this case). Thus, Plaintiff's counsel's claim is demonstrably false.

Perhaps more importantly, if said transgender student chose not to seek a preliminary injunction, MASD would move for a stay of all proceedings pending the Seventh Circuit's decision not only in this case, but in *A.C. v. Metro. Sch. Dist. of Martinsville*, currently pending before the Seventh Circuit on the merits. Judicial economy would dictate granting such a motion to stay proceedings because it would be nonsensical for the district court to proceed according to Seventh Circuit precedent which the Seventh Circuit itself has called into question. Thus, Plaintiff's counsel does a beautiful job illustrating exactly why the current stay in this case should remain in place pending decision by the Seventh Circuit.

### III. IN LIGHT OF THE NUMBER OF DISPUTED FACTS AND MATERIAL MISREPRESENTATIONS PROFFERED BY PLAINTIFF'S COUNSEL, BEFORE THE COURT CONSIDERS GRANTING PLAINTIFF'S MOTIONS, DEFENDANTS RESPECTFULLY REQUEST A HEARING.

As described in detail in Section I, *supra*, Plaintiff's counsel engages in material misrepresentations of both law and fact. While Plaintiff's motions have absolutely no merit for the reasons set forth in Defendants' brief in opposition [Dkt. #49], and the reasons set forth herein,

should the Court choose to entertain the possibility of granting said motions, a hearing must first be held in order to address these issues and preserve a clean record for decision and review. Defendants' brief in opposition [Dkt. # 49], Plaintiff's Reply Brief [Dkt. #58], and this brief illustrate in great detail the disputed facts, as well as the material misrepresentations of fact and law proffered by Plaintiff's counsel. While the Court has ample basis to deny the motions without the need for a hearing, should the Court find any basis for entertaining the possibility of granting Plaintiff's motions, Defendants respectfully request a hearing, with an opportunity to present evidence and argument on the motions.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court deny Plaintiff's Motion to Lift Stay and Motion for Voluntary Dissolution of Preliminary Injunction.

Dated this 10th day of August, 2025.

Respectfully Submitted,

BUELOW VETTER BUIKEMA OLSON
& VLIET, LLC

/s/ Joel S. Aziere
Joel S. Aziere (WI Bar No. 1030823)
jaziere@buelowvetter.com
Hunter M. Cone (WI Bar No.: 1123048)
hcone@buelowvetter.com
Buelow Vetter Buikema Olson & Vliet, LLC
20855 Watertown Road, Suite 200
Waukesha, Wisconsin 53186
Telephone: (262) 364-0250
Facsimile: (262) 364-0270

*Attorneys for Defendants Mukwonago Area School District and Joseph Koch*